# PITTS v. CURTIS.

1. Where a father by will gave to his son a slave until the slave attained the age of twenty-one years, and the remainder of the life of the slave to his daughter, then a married woman—Held, that the right of the husband to the slave was perfect on the assent of the executor to the legacy, that the possession of the tenant of the particular estate was the possession of the tenant in remainder—and that the right to the slave survived to the husband upon the death of the wife before the termination of the particular estate.

ERROR to the Circuit Court of Dallas.

Detinue for a slave by the defendant in error against the plaintiff in error.

Upon the trial below it was in evidence that the plaintiff, had married the sister of the defendant in 1828—that the father of the defendant and plaintiff's wife, by his last will and testament, made a disposition of the slave in controversy in the following words: "I give and bequeath unto my son Noel Pitts, a negro boy named Jacob, until he arrives at the age of twenty-one, and the remainder of his life to my daughter Henrietta Pitts." The negro boy became twenty-one years of age in the year 1839, went into possession of defendant under the will and has so remained ever since. Henrietta, wife of plaintiff, died in 1836. There was proof of demand and refusal.

Upon this state of facts the Court charged the jury that the facts if true, authorized the plaintiff to recover the slave, to which the defendant excepted.

Judgment was rendered for the plaintiff. The errors assigned question the propriety of the charge of the Court.

LAPSLEY, for the plaintiff in error, insisted that the negro in question belonged to the representatives, or next of kin, of the wife ; that the husband was not entitled to it, because it never had been reduced into possession. [3 Stewart, 375 ; 9 Porter, 636 ; 2 Nott & McCord, 147.]

That the cases relied upon from Kentucky were not applicable, because made in reference to statutes entirely unlike ours, by which slaves were considered real estate.

R. SAFFOLD, contra, maintained that this was not a chose in action, but a vested interest in the slave, which would have gone to the representatives of the husband if his wife had survived him. That the possession of the son, taking the particular estate, was the possession of those ·in remainder. [2 Call, 447; Clancy on Rights, 11; 8 Porter, 36; 3 Littell, 275; 4 id. 356; Litt. Sel. Cases, 331; 4 Bibb, 174; 1 H. B. 535; Coke Litt. 351, note a.; 1 Cruise Dig. 59; 3 Wilson, 521; 3 Term, 631; 7 id. 390; 8 id. 213.]

To show that where the cause of action has its inception before marriage, but is completed afterwards, the husband and wife may join, or may sever in trover or trespass, but that in detinue the husband must sue alone, he cited 1 Chit. P., 6 ed. 85, 139; 1 Sel. N. P. 546; 2 Murphy, 351.

ORMOND, J.—As the husband is not entitled to the *choses in action* of the wife not reduced into possession during the coverture, the precise question presented on the record is, whether the right of the wife of the defendant in error to the slave in controversy, under the will of her father, was a present vested interest, or a right in action merely.

In the case of Magee v. Toland, [8 Porter, 40,] this Court defines a chose in action to be " any right to damages, whether arising from the commission of a *tort*, the omission of a duty, or the breach of a contract." The bequest in this case was of a slave to a son of the testator, until the slave attained the age of twenty-one, and the remainder of his life to the wife of the defendant in error. This remainder in the slave cannot

in any sense be considered a right to damages, but was an absolute vested interest in the slave, the enjoyment of which was postponed for a certain ascertained period.

It is of no moment that the actual occupancy, or right to the present possession for an ascertained period, was in another, that is nothing more than exists in every bailment, and no principle is better ascertained than that the possession of the bailee is the possession of the bailor. The rule of law is that the general property of a chattel draws to it the possession. The special property being in the plaintiff in error, his possession of the slave was consistent with, and was in law the possession of the tenant in remainder, who had the general property in the slave.

Such being the law, the right of the husband was perfect upon the assent of the executor to the legacy, which is shown in this case. He might have sold and transferred it before the particular estate was at an end; upon his death before his wife it would have gone to his representatives and by necessary consequence having survived his wife, the title vests in him.

These consequences all legitimately flow from the principles settled in Magee v. Toland, and such has been the decision of other Courts in similar cases. The case of Bank's adm'r. v. Marksbury,, [3 Litt. Rep. 275,] is expressly in point, and is admitted to be so by the counsel for the plaintiff in error, but he insists that that decision is founded on a statute of Kentucky, by which slaves are considered as real estate. But the statute to which he refers, was expressly designed to give to slaves bequeathed or conveyed to a married woman all the attributes of personal property. The decision referred to is not based upon a statute, but was determined upon the general principles of the common law.

There is no error in the judgment of the Court, and it is therefore affirmed.