## BROOME, ET AL. v. KING, ADM'R.

1. Where a remainder is created in a slave, and the tenant for life sells it to a stranger, this is a *discontinuance* of the estate in remainder, and turns it into a *chose in action*. Consequently, when such an estate is vested in a *feme sole*, and the *discontinuance* takes place before her marriage, her estate in the slave does not pass to the husband, *absolutely*, by the marriage, although the life estate determines during the *coverture*, so as to enable the husband to sue for the conversion in his own name, but the suit must be in the names of the husband and wife jointly.

Writ of Error to the Circuit Court of Sumter.

TROVER, by J. C. Broome, J. A. Bradford, M. A. Broome and S. Broome against David Curry, for the conversion of a slave. Curry died during the pendency of the suit, and King was made a party as his administrator.

The plaintiffs made title to the slave under the will of Joseph Pack, senior, who died in South-Carolina previous to

1827, and by the terms of his will, directed·certain of his personal estate, after the death of his wife, to be sold by his executors, and the proceeds te be equally divided between his surviving children, to be held by them in the same manner as certain property specifically devised to each of them. The specific devise to one of them, Dorcas, the wife of S. Broome, is " to her sole and separate use during her natural life only, and from and after her death to such child or children as she might leave at her death." Mrs. Pack, the widow, continued in possession of the slaves not specifically devised by the will, until the year 1827, when with her assent, they were divided between the children of the testator. Spires Broome, or in other words, Dorcas his wife, obtained the slave now sued for in this division, and continued in possession until 1830, when he sold him to Alexander Pack, who two years afterwards sold him to Joseph Pack, jr, with whom he continued until Pack's death in 1838. After the death of Pack, his estate was administered by Curry, who became the purchaser of the slave at his own administration sale, and continued in possession until his death. Dorcas Broome died in Alabama in 1842, and three of the plaintiffs are her children. Bradford, the other plaintiff, is the husband of the only other child, and was married to her in the year 1837.

The court charged the jury that the possession of the slave by Curry, was adverse to the plaintiffs, and that they could not recover, because it was shewn that the wife of Bradford, one of the legatees of Pack, senior, was not joined in the action. The plaintiffs excepted to this charge, and afterwards suffered a non-suit.

This charge is now assigned as error.

R. H. SMITH and WM. M. MURPHY, for the plaintiff in error, insisted, that the children of Dorcas Broome, under the will of Mr. Pack, took a vested interest in remainder in the slave in controversy, and therefore that the wife's interest vested in the husband on the marriage. [Barnett v. Roberts, 4 Dev. 81; Knight v. Leake, 2 Dev. & B. 135; Pitts v. Curtis, 4 Ala. Rep. 350; Barks v. Marsbury, 3 Litt. 275; Armstrong v. Simonton, 2 Murph. 351.] In Virginia the courts maintain the same doctrine. [Lomax on Ex'rs, 131.]

F. S. LYON and A. GRAHAM, of Greene, contended,

1. That Bradford was not entitled to property of his wife, unless reduced to possession, during the coverture, and therefore should join in this action, which is for a conversion.—[Johnson v. Wrenn, 3 Stew. 172; McGee v. Toland, 8 Porter, 36; Bibb v. McKinley, 9 Ib. 636; Mayfield v. Clifton, 3 Stew. 375; Hagan v. Bell, 4 Stewt. & P. 286; 4 Bibb, 174.]

2. Curry is in possession of the slave under an adverse title, not in accordance with that of the plaintiffs, therefore the husband cannot sue alone. As to what is an adverse possession, see Brown v. Lipscomb, 9 Porter, 472; Goodwin v. Lloyd, 8 Ib. 237. A mis-joinder of one having no title, is fatal. [Hardeman v. Sims, 3 Ala. Rep. 751.]

GOLDTHWAITE, J.—It will be seen, this cause went off by a non-suit in the court below, for the supposed defect in making Bradford a plaintiff without joining his wife. In determining the question thus presented, we shall endeavor to avoid every thing like a committal upon the point, whether the plaintiffs have, or have not, any title under the will of Mr. Pack, to enable them to recover for the conversion of the slave. We think it well established, at least in the courts of this State, as well as several of the other slave holding States, that when an estate in remainder of slaves has *vested* in the wife, and the possession is with the person having the precedent estate, then the husband, by virtue of his marital rights, becomes the owner, and is entitled to the slaves, although his wife may be dead, when the precedent estate falls in. [Pitts v. Curtis, 4 Ala. Rep. 350; Dade v. Alexander, 1 Wash. 30; Banks v. Marsbury, 3 Litt. 275.] In North Carolina the different decisions seem to have been made at different periods. See cases cited 2 Iredell's Digest, 533, § 7. In the report of Neal v. Haddock, 2 Hayw. 183, Judge Haywood expresses considerable dissatisfaction with the judgment then given—that being adverse to the right of the husband—and states that although he had ever been of the same opinion, further consideration had compelled him to change it. In a more recent case however, the same court considered such a remainder as the subject of levy and sale, by a *fi.*

*fa.* against the husband. [Barnett v. Roberts, 4 Dev. 81.] It is proper here, to avoid misconception of the extent of the decision in Pitts v. Cutirs, before cited, to state, it does not decide what the effect would be on the remainder if the wife, instead of the husband, was the survivor. It will be perceived that none of these cases settle, that when the estate in remainder of the wife has been turned into a mere right of action, that the husband is either invested with it, or can redress the injury by suit in his own name. Lord Coke, in direct reference to this subject says, "if a *feme sole* be possessed of a chattel real, and be thereof dispossessed, and then taketh husband and the wife dieth, this right is not given to the surviving husband, by the intermarriage, but the executors or administrators of the wife shall have it." [Coke on L. 351, a.] A similar rule undoubtedly applies to personal property, though there is some confusion in the books growing out of the statement in the old reporters, that the husband may have detinue or replevin for goods of the wife, which were in the possession of a third person, at the time of the marriage, [Powes v. Marshall, 1 Sederfin, 172,] or trover, if the conversion be subsequent to the marriage. [2 Lev. 107.] These expressions, however, must be understood only of cases when the possession of the third person is in accordance with the title of the wife, or held under her, but there is no foundation to say, that when the possession of the third person is adverse, that the husband can alone maintain the action, than there would be to allow him to sue for any other chose in action. The case of Magee v. Toland, 8 Porter, 36, settles that the bailee of the wife before marriage, may be sued by the husband afterwards, eithet in detinue or trover, and that of Johnson v. Pasteur, Cam. & Nor. 464, is full to the point, that when the property of the wife is detained, or converted before the marriage, the suit must be in the name of the husband and wife. The reason why it must be so, is that given by Lord Coke, in the passage quoted—that is, that in the event of the death of the wife, the right survives to her representative.

It being thus shown, that when the right of the wife, upon the intermarriage is one in action, it remains to inquire if such is the condition of the right in this case.

We apprehend, the estate of a remainder man is as subject to be turned into a mere right of action as any other vested estate. The question is, did the alienation of the slave in controversy, by Broome, the husband or the tenant for life, produce this consequence? Here again we must draw an analogy from the correspondent estate in lands, as to which, it was the settled rule of the common law, that a feoffment by the tenant in life, worked a discontinuance of the estates of those in remainder. [Coke on Litt. 325, a.] It was also an incident of a tenancy for life, that it was subject to forfeiture, if the tenant enfeoffed another of a larger estate, and upon such a forfeiture, the remainder man entitled to enter and enjoy his estate. [Coke on Litt. 251, a.] There is much curious learning on this subject, which it is unnecessary to enter upon, and the common law doctrine seems, so far as the forfeiture of the estate of the tenant for lifeseems not to have been generally renognized in many of the States. [4 Kent's Com. 84, 425, contra, 5 Dane's Ab. 13, § 7.] And the rule seems to be general, that the statute of limitations does not commence to run against the remainder man until the death of the tenant for life. [Wells v. Prince, 9 Mass. 509; Wallingford v. Heart, 15 Ib. 471, and cases there cited in note; 2 Wend. 357; Doe v. Danvers, 7 East, 321.] Although the consequences of a discontinuance by the tenant for life may not be so penal at present as they were once considered, we think it does not admit of doubt, that one effect is, to change the estate in remainder to a right of action only, and it seems to follow, that if this right is not enforced by suit, within the proper time, the estate will be barred by the adverse possession of the alienee.

To apply the rules thus ascertained to the case before us, it appears, that when Bradford intermarried with one of the joint tenants in remainder, that estate had previously been discontinued, and turned into a right of action, by the sale of the slave. The consequence is, that the marital rights of Bradford do not attach, until he has reduced the property to possession, by suit at law, and probably the same effect might arise from a suit in equity, ascertaining the right in remainder, and securing it by inventory, or otherwise, to the remainder man.

The result is, the decision of the circuit court is free from
·error.

Judgment affirmed.