## JONES' EX'RS *vs.* HOSKINS.

1. If a witness becomes interested in the event of a pending suit by the act of one of the parties, without the assent of the other, he is not thereby rendered incompetent to testify in behalf of the latter, although the interest thus created is in his favor.

2. The donor of property is not liable to the donee on a failure of title, and has, therefore, no such interest in sustaining the title of the donee, as will exclude him from testifying in his favor.

3. A sale by one, having a life estate in a chattel, which purports to convey the entire title, does not operate as a forfeiture of the life estate, but vests it in his vendee.

ERROR to the Chancery Court of Franklin. Tried before the Hon. W. W. Mason.

THE bill in this case was filed by the defendant against the plaintiffs in error. The original bill alleges that on the 20th of November 1828, Mrs. Nancy Hoskins, the mother of complainant, being about to intermarry with Arthur Jones, now deceased, with his knowledge and consent, executed to the complainant a conveyance for the following slaves, Sarah, Swift, Martha, Haywood, and Maranda, and thereupon the complainant entered into an agreement, by which he re-conveyed to his mother three of the slaves she had given to him, to-wit, Sarah, Swift and Martha, to be retained by her during her life, and after her death to be returned to the complainant. The bill also alleges that the marriage between Arthur Jones and Mrs. Hoskins was consummated, and that by the marriage, Arthur Jones became entitled to an estate during the life of his wife in the three slaves, reconveyed by the complainant to his mother; that upon the death of Arthur Jones, his executors took possession of said slaves and their increase, consisting of two or three others, and asserted an absolute title to them, and were about to sell them as the absolute property of Arthur Jones, deceased, without regard to the right of the complainant in remainder, after the death of his mother; that the complainant has reason to believe and does believe that the object and intention of the executors are to defraud him of his just rights; that if said slaves are sold, they will be removed beyond the limits of the State, and his recov-

ery of them at the death of his mother will thereby be rendered difficult, if not impracticable; and that they are family negroes, to whom he is much attached and whose loss could not well be compensated by the mere recovery of the value.

The prayer of the bill is for an injunction restraining the sale, and removal of the slaves from the State, and that the rights of the complainant be protected. An injunction was granted by a circuit judge, restraining the executors from removing the slaves from the State, unless they should give bond in the sum of five thousand dollars, conditioned for the forthcoming of the slaves to abide the final decree that might be rendered in the cause. The defendants answered the bill, and allege that the conveyance of the slaves was a fraud upon the marital rights of Arthur Jones, the second husband of complainant's mother; that it was executed pending the treaty of marriage between her and Arthur Jones, and without his knowledge or consent. Mrs. Jones, however, who was also made a defendant, asserts in her answer, that before the deed was executed, Arthur Jones was advised of her intention to make it, and fully approved of it; and that during the marriage he never claimed more than a life estate in the slaves.

Notwithstanding the bill and the injunction, the executors, having given the required bond, proceeded to sell the slaves at public auction, as the absolute property of their testator, at the time of his death, and Mrs. Jones became the purchaser at the sum of $5011, for which she executed her notes payable in twelve months. She then took possession of the slaves, and filed a cross-bill against the executors and the complainant, in which she admits the right of the complainant, and alleges that she purchased the slaves, because they were family servants and she was unwilling for them to pass into the hands of strangers; and she prayed to be relieved from her purchase, and that her notes might be cancelled. After filing the cross-bill, Nancy Jones, the mother of the complainant, departed this life, having duly executed her last will and testament, by which she bequeathed the slaves in controversy to the wife of complainant, and appointed him executor, in which character he has come into the possession of them; but under the laws of Mississippi, where the testatrix and Mrs. Hoskins both resided, the complainant as husband takes no interest, in right of his wife, in the

slaves.   These facts are brought to the view of the court by a supplemental bill filed by the complainant, who, also, as executor of his mother, revived her cross-bill seeking relief against the purchase, she made of the slaves at the sale by the executors.   On the final hearing, it was shown that during the pendency of the suit, the executors had come to a settlement in the Orphans' Court of the estate of their testator, and Mrs. Jones, who was afterwards examined by the complainant as a witness in the case, after being first released by him from liability by reason of the deed of gift previously executed by her, agreed with the executors that they should retain in their hands out of the legacy bequeathed to her an amount sufficient to pay her notes, with interest, until the termination of the suit, to be then appropriated to the payment of those notes, if the suit should terminate in favor of the executors, or to be paid over to her and her notes given up, if the suit should be decided in favor of the complainant.   The testimony of this witness was objected to on the ground of interest, but the chancellor overruled the objection.

The chancellor dismissed the cross-bill, but, thinking that the rights of the complainants were established by the proof taken in the cause, decreed in favor of the complainant, and declared that the sale by the executors worked a forfeiture of the life estate in the slaves, and ordered the notes, given by Mrs. Jones to the executors to secure the purchase money, to be cancelled, and the contract to be annulled.   From this decree the executors have taken an appeal to this court.

Nooe and Cooper, for the plaintiffs in error.

Towns, for the defendant.

DARGAN, C. J.—1. It is contended that Mrs. Nancy Jones was incompetent to testify on the part of the complainant, because she was interested in sustaining his title to the slaves in controversy.   If we were to admit, for the sake of argument, that her purchase from the executors and her subsequent agreement that they should retain out of the legacy, bequeathed to her by the will of Arthur Jones, her husband, an amount equal to the purchase money agreed to be given for the slaves, does make it to her interest that the title of the complainant shall pre-

Jones' Ex'rs v. Hoskins.

vail, still, we think it beyond doubt that such an interest, acquired as this was, cannot deprive the complainant of the benefit of her testimony. It is true, that an interest acquired by a witness in the event of a suit, after the matter or fact happened, to which he is called to give testimony, may render him incompetent.—Greenl. Ev. 1, § 418. But whether an interest, subsequently acquired by the witness, will render him incompetent or not, must depend upon the mode and manner of his acquiring it, and in some cases upon the intent with which it was done. Yet we apprehend no case can be found that would sustain the doctrine, that one party, after a suit was instituted, could sell the subject matter in dispute to a witness, without the assent of the other party, and by such sale deprive him of the benefit of his testimony. Such a rule would, in our judgment, be not only opposed to sound policy, but would often lead to the perversion of justice. In the case of Woodhull v. Ramsay, 3 Johns. Cas. 235, the court said, " The interest which will exclude the witness must not have arisen after the fact, to which he is called to testify, happened, by his own act, without the interference, or consent of the party by whom he is called; because if this were the rule, it would be in the power of the witness, and even of the adverse party, to deprive the opposite party of the benefit of his testimony." This authority was recognised by this court in the case of Napier v. Cook, 9 Ala. 838, and seems to be fully sustained by the decisions of the American courts.—See the cases collected in Cowen & Hill's Notes to Phil. Ev. 273. This view renders it unnecessary to decide whether the purchase of Mrs. Jones did in fact render her an interested witness.

2. Nor is there any thing in the objection, that by the conveyance of the witness to the complainant, she warranted the title to the slaves, for this conveyance was purely voluntary, and no recovery could be had for a breach of the warranty, inasmuch as the complainant paid nothing and has not suffered any injury or loss in consequence of it. Independent, however, of this, the witness was released from the warranty before she was examined upon the last commission.

3. Mrs. Jones was a competent witness; and her testimony fully shows that previous to her intermarriage with Arthur Jones, she informed him of her intention to convey the slaves to her son,

and that he approved of it, and never during his life claimed more than a life estate in the slaves. This testimony establishes the right of the complainant to the slaves, after the death of Mrs. Jones, his mother, and to this extent the decree should have been in his favor. But the chancellor erred, in holding that the sale by the executors, purporting to be a sale of the entire title, produced a forfeiture of their right during the life of Mrs. Jones. Without entering into an argument to show that a sale of a chattel by one, having but a life estate or other less interest, does not produce a forfeiture of that interest, although the sale purported to convey the entire title, we will simply refer to the case of Lyde v. Taylor et al., decided at the last Term, in which we held that a sale of a slave by one having a life estate conveyed to his vendee his interest merely. For this error, the decree must be reversed, but as we can here render the decree that the chancellor should have rendered, it becomes our duty to do so without remanding the cause. It may, however, be observed that the decree in favor of the complainant upon his original and supplemental bill may entirely annul the contract of sale between the executors and Mrs. Jones, who purchased *pendente lite*, and entitle her executor to have the notes cancelled, he paying or accounting for the value or hire of the slaves from the time she came into possession of them, until her death. These equities, however, between the parties, cannot be settled in the present suit. If they cannot be adjusted between the parties without suit, they must be brought before the court in another suit, in which they can be properly put in issue.

The decree of the chancellor is reversed, and this court proceeding to render such decree as should have been rendered in the court below, it is ordered, adjudged, and decreed, that the right and title of the complainant to the slaves in controversy, after the death of his mother, Mrs. Nancy Jones, be established, and that he be entitled to have and hold them in his own right, free from the rights and claims of all others; and further, that he recover of the executors of Arthur Jones, deceased, all the cost of this suit in the court below, but that the plaintiffs in error recover of him the cost of this court.

PARSONS, J., not sitting.