## HUMPHRIES *vs.* DAWSON.

[DETINUE FOR SLAVES.]

1. *Amendment of complaint.*—Where the plaintiff sues as "trustee of L. H. and F. D.," two married women, the complaint may be amended, (Code, § 2403,) by adding the words " and for the remainder-men who are their children."
2. *Plea in abatement of pendency of another action.*—The priority, and not the mere pendency, of another suit founded on the same cause of action, is available under a plea in abatement; but neither a bill in chancery, nor an action brought in another State, is good matter in abatement.
3. *Competency of donor, as witness for donee.*—The donor of a slave is a competent witness for the donee, or one claiming under the donee, in a suit involving the title to the slave.
4. *Identification of exhibit to deposition.*—Where the commissioner certifies, "that the annexed deed, hereto attached, marked 'A,' was shown to the witness, and by him examined and recognized to be the original deed by him signed and delivered," a deed which is shown to have

Humphries v. Dawson.

been enclosed in the package containing the deposition, and which is marked as stated in the certificate, is sufficiently identified as the exhibit referred to.

5. *Construction of deed, as to respective rights of trustee and beneficiaries.* Where a female slave is conveyed by deed to a trustee, "in trust that he shall take and receive all the profits and income arising from the said slave and her increase, and apply the same to the education and maintenance of L. and H.," his two daughters, "and in trust, upon the marriage or coming of age of the said L. and H., to permit them to have the full use, authority and command over the said slave and her increase, (a division or partition having been made,) for and during the natural lives of the said L. and H.; and after their death, in trust further to convey the respective portions of the property to their children, in fee-simple forever,"—if the slaves are divided between the two daughters, on their marriage or coming of age, and the respective portion of each delivered to her by the trustee, he cannot afterwards, during the lives of the daughters, maintain detinue against them, or any one holding under them, to recover the slaves; and if, without making a division, he delivers all the slaves to one of the daughters, on her marriage, and afterwards conveys other property to the other daughter in lieu of her interest in the slaves, he cannot maintain detinue for the slaves, against a purchaser from the daughter to whom they were delivered.

APPEAL from the Circuit Court of Chambers. Tried before the Hon. ROBERT DOUGHERTY.

THIS action was brought by Samuel Dawson, against John R. Humphries, to recover a negro woman named Becky, with her four children, and damages for their detention. The original complaint is nowhere set out in the record; but the bill of exceptions states, "that the plaintiff moved to amend his complaint, by adding, after the words 'trustee of Leonora Hobbs and Frances Dillard,' the words 'and for the remainder-men which are their children;' to which amendment the defendant objected, as changing the character in which the plaintiff sued, and as putting a new title in issue; but the court overruled the objection, and allowed the amendment to be made, and the defendant excepted." The defendant then prepared and tendered a plea in abatement, duly verified by affidavit, alleging that, on the 24th May, 1858, before the complaint in this case was amended, a bill in equity was filed on the chancery side of the circuit court of Lowndes county, Mississippi,

in the name of Samuel Dawson, as trustee of Leonora Hobbs and Frances Dillard and their children, against the defendant in this suit and others, to recover the slaves here in controversy; which suit, the plea averred, was still pending and undecided, and involved the same title that was put in issue by the amended complaint. The court rejected the plea, on the ground that it came too late; to which the defendant reserved an exception.

The plaintiff claimed the slaves under a deed from John D. Dawson, which was executed in South Carolina, dated March 1, 1841, and in the following words : " Know all men by these presents, that for and in consideration of the natural love and affection I have and bear to Leonora and Frances, daughters of Samuel Dawson, and for and in consideration of the sum, of one dollar to me in hand paid at and before the sealing and delivery of these presents, the receipt whereof I do hereby acknowledge, have bargained, sold, assigned, and set over to the said Samuel Dawson, all my right, title and interest in and to a negro girl, named Becky, and her increase; to have and to hold the said negro girl and her increase, unto the said Samuel Dawson, his heirs, and assigns, to his and their own proper use and behoof forever; in trust, nevertheless, that the said Samuel Dawson take and receive all the profits and income arising or to arise from the said slave and her increase, and apply the same to the education and maintenance of Leonora and Frances; and in trust, upon the marriage or coming of age of the said Leonora and Frances, to permit them to have the full use, authority and command over Becky and her increase, (a division or partition having been made,) for and during the natural lives of them, the said Leonora and Frances ; and after their death, in trust further to convey the respective portions of the above-named property to the children of the said Leonora and Frances, in fee-simple forever. In witness whereof," &c.

For the purpose of proving the execution and delivery of this deed, the plaintiff took the deposition of said John D. Dawson. Before the trial began, the defendant moved

to suppress the deposition of said Dawson, "on the ground
that he was the donor of the property sued for, and be-
cause he cannot be received as a witness to prove the exe-
cution of said deed, unless the testimony of the subscribing
witnesses thereto is shown to be inaccessible." The court
overruled the objections, and the defendant excepted. The
defendant also moved to suppress the original deed, which
was made an exhibit to Dawson's deposition, "on the
ground that it is not in any wise attached to said deposi-
tion, nor certified by the commissioner." The commissioner
stated, in his certificate to the deposition, "that the an-
nexed deed of conveyance, hereunto attached, marked
'A,' was shown to the witness, and by him examined and
recognized to be the original deed by him signed and deliv-
ered." The deed, on inspection, was found to be endorsed
"A," and was shown to have been enclosed in the package
containing the deposition of the witness, and to have been
attached to the interrogatories after the deposition had been
opened. The court refused to suppress the deed, and the
defendant excepted.

The evidence showed that, soon after the marriage of
Leonora with A. H. Hobbs, which was in 1841, she and
her husband removed to this State, and brought the slaves
with them; and that, in 1845, they sold the slaves to one
Lawrence, who afterwards sold and conveyed them to the
defendant. The defendant also introduced evidence show-
ing that Samuel Dawson delivered the slaves to said Hobbs
and wife, soon after their marriage, and consented that they
might bring the slaves with them to this State; and that
the subsequent sale by Hobbs and wife to Lawrence was
made with his approbation, and by his authority. There
was other evidence in the case, also, but it requires no par-
ticular notice.

The court charged the jury, among other things, as fol-
lows: "3. That the deed from John D. Dawson to Samuel
Dawson required that a partition or division of said
slaves should be made, before the trust could be executed in
favor of said Leonora, so as to vest the legal title to any

portion of said property ; and that, unless the proof showed that such division or partition had been made, Hobbs and wife had no legal interest which they could dispose of." The defendant reserved an exception to this charge, and requested, among other charges, the following: "5. If the jury believe, from the evidence, that on the marriage of Leonora with said Hobbs, plaintiff delivered the property to them under the trust created by the deed from John D. Dawson, for the purpose of letting them keep the entire property without division or partition; and that after the marriage of Frances with, Dillard, plaintiff paid them in other property, or agreed to do so; and that they consented to such arrangement; and that plaintiff, in pursuance of such agreement, paid them a tract of land; and that they received the same in part payment of their interest in the slaves sued for in this action, for the purpose of letting Hobbs and wife keep the entire property in the slaves; and that all this took place before the slaves were sold by Hobbs and wife to Lawrence,—then the plaintiff cannot recover in this action, if the defendant has acquired the interest of said Hobbs and wife." The court refused this charge, and the defendant excepted to its refusal.

All the rulings of the court, to which, as above stated, exceptions were reserved by the defendant, are now assigned as error.

RICHARDS, & FALKNER, for appellant.
GOLDTHWAITE, RICE & SEMPLE, contra.

R. W. WALKER, J.—[1.] The original complaint described the plaintiff as "trustee of Leonora Hobbs and Frances Dillard." Upon the trial, against the defendant's objection, the plaintiff was permitted to amend the complaint, by adding, "and for the remainder-men which are their children." In this we think there was no error. The original complaint averred that the plaintiff was suing, not as an individual, but in a representative capacity. The amendment is but a further and more accurate description

of his representative capacity, and did not substitute a new cause of action. If the complaint had been by the plaintiff individually, he could have amended it, so as to authorize a recovery in his representative capacity.—*Grimm's Adm'r v. Crawford*, 29 Ala. 626. In that case, it is said—"Such an amendment does not substitute a new cause of action. The cause of action is really the same. The amendment merely inserts that which is necessary to secure a recovery upon the existing cause of action, which was imperfectly set forth."

2. The matter of the plea in abatement, which was rejected by the court, would not have been available to the defendant; and hence its rejection could work no injury to him. It is the priority of a suit, that abates another founded on the same cause of action.—1 Chitty's Pl. 215 ; *Renner v. Marshall*, 1 Wheaton, 215. If there be any reason which renders this principle inapplicable in the present case, a fatal objection to the plea is found in the other principle, that the pendency of a suit in another State is no cause of abatement of a suit instituted in this State.—*Browne v. Joy*, 9 Johns. 221 ; *Walshe v. Durkin*, 12 Johns. 99 ; *Salmon v. Wooten*, 9 Dana, 422 ; *McGilton v. Love*, 13 Ill. 486 ; *Drake v. Brender*, 8 Texas, 352 ; 2 Parsons on Contracts, 232 ; *Hatch v. Spofford*, 22 Conn. 496, *et seq.* It appears, also, that the pendency of a bill in equity has not usually been considered sufficient ground for a plea in abatement of a suit at law.—*Colt v. Partridge*, 7 Metcalf, 570 (576) ; *Blanchard v. Stone*, 16 Vermont, 234 ; *Hatch v. Spofford*, 22 Conn. 495–6 ; Story's Conflict of Laws, § 610 *(a)*, Bennett's edition.

3. The motion to suppress the deposition of John D. Dawson was properly overruled. The donor is a competent witness for the donee, or one holding under the latter. *Jones v. Hoskins*, 18 Ala. 489.

4. There was no error in overruling the motion to suppress the original deed of gift.

The bill of exceptions does not show that any exception was taken to the ruling of the court in relation to the offer

of the defendant to read a portion of the former deposition of John D. Dawson.

5. It will not be denied, that, if, on the marriage, or coming of age of the daughters, the property had been divided, and their respective portions delivered to them by the trustee, he could not afterwards, and during the lives of the daughters, have maintained detinue for the recovery of the slaves, against the daughters, or any one holding under them. For, whatever might be the case as to the continuance of the legal title in the trustee, it is obvious that, on the facts supposed, the trustee would not, during the lives of the daughters, have the legal right to the possession of the slaves. On the contrary, the right to the possession would, according to the stipulations of the deed, be in the daughters; and where the deed stipulates for the possession of the *cestui que trust*, the trustee, though he may be clothed with the legal title, cannot maintain detinue against the *cestui que trust.—Gunn v. Barrow*, 17 Ala. 247.

Now it is obvious that the deed contemplated a division of the property on the marriage or coming of age of the daughters. That is the period indicated as the time at which it was the duty of the trustee to make the division. It is obvious, moreover, that the direction that the division should be then made, was intended mainly for the benefit of the daughters; its purpose being, to secure to them, after their marriage, or coming of age, and during their lives, the separate use and enjoyment of equal shares of the property. The division then made would, it is true, have the secondary effect of ascertaining the respective portions of the property to which the rights of each set of remainder-men would attach. But it is not to be doubted, that the primary purpose of making the division at the particular time designated by the donor, was what is above stated. It appears, however, that the trustee failed to perform the duty cast upon him, to divide the property on the marriage or coming of age of the daughters. The evidence tended to show that, without making any such division, he delivered all the slaves to one of the daughters after her

marriage. The bill of exceptions discloses, moreover, that there was evidence tending to show that, after the marriage of the daughters, an arrangement was effected, to which the trustee was a party, and the validity of which he is therefore in no condition to question, whereby Mrs. Dillard received from the trustee other property, in lieu of her interest in the slaves, for the purpose of vesting in Mrs. Hobbs, who was then in possession, the entire interest of both daughters under the deed ; and that in pursuance of this arrangement, Mrs. Hobbs and her husband remained in possession of the entire property until they sold to Lawrence.

On this state of facts, it is obvious that, so far as the interests of the daughters are concerned, the necessity for a division is obviated, by the arrangement whereby the two interests were merged, and vested in one of the daughters. It is also clear, that if the facts were as here supposed, the division of the property which, under the deed, it was the duty of the trustee to make, on the marriage or coming of age of the daughters, was no longer practicable when this suit was begun. The division intended by the donor was to be made, as we have seen, on the marriage or coming of age of the daughters. The property consisted of a female slave and her increase. From the nature of the property, constant changes must be going on in its value and amount, so that, at the time this suit was brought, it was manifestly impossible to make the very division which should have been made at the time appointed by the deed. In other words, it would not be practicable to so divide the property, in 1853, as to allot to each daughter the very share which would have fallen to her if the division had been made four or five years sooner. So far as the interests of the remainder-men are concerned, a division made now would be no more in conformity with the requirements of the deed than one which may be made at the termination of the life-estate. The trustee has suffered the time appointed for the division to pass by. The donor intended that the division should take place on the marriage or coming of age of the

daughters, before the delivery of the property to them, and when both daughters had an interest in the property, and each might be considered as representing her own children, the remainder-men after her, in the making of the division. By the act of the trustee, the making of the division at the time, and under the circumstances intended by the donor, has become impossible ; and so far as the interests of the remainder-men, or the purposes of the donor in regard to them, are concerned, there is no reason why the division may not be made at the termination of the life-estate, as well as at this time.

The ground on which the trustee's right to reduce the property to his possession is placed, is that the trust in reference to the division has not been executed. But, as we have seen, there was evidence tending to show that, by the agency of the trustee himself, a state of facts has been brought about which renders the execution of that trust, as contemplated by the deed, no longer practicable ; and our opinion is, that if the facts referred to were established by the evidence, it was not essential to the defense of this suit to show that there had been an actual division or partition of the property. We think that the court erred in the third charge given, and in refusing to give the fifth charge asked by the defendant.

We do not intend, by anything we have said, to express an opinion adverse to the continuance of the legal title in the trustee ; nor are we to be understood as indicating any opinion upon the question of the right or duty of the trustee to protect, by proceedings in another forum, the interests of the remainder-men.

Judgment reversed, and cause remanded.