[Pickett v. Doe, ex dem. Pope.]

# Pickett *v.* Doe, *ex dem.* Pope.

*Ejectment by Devisees in Remainder, against Purchaser from Tenant for Life.*

1.  *Sale of absolute property by tenant for life; effect on remainder.*—The principle decided in the case of *King v. Broome* (10 Ala. 819), and followed in several other cases (*Price v. Tally*, 18 Ala. 21; *Walker v. Fenner*, 28 Ala. 367; *Thrasher v. Ingram*, 32 Ala. 645), as to the effect of a sale of the entire property by a tenant for life on the estate and rights of a vested remainder-man, applies only to personal property, and the court declines to extend it to cases involving real property.

2.  *Adverse possession, as between tenant for life (or purchaser from him) and remainder-man.*—The possession of land by a tenant for life can not be adverse to the remainder-man; and if he sells and conveys to a third person, by words purporting to pass the absolute property, the possession of the purchaser is not, and can not be during the continuance of the life-estate, adverse to the remainder-man.

3.  *Permanent improvements by adverse possessor.*—"Adverse possession," as the words are used in the statute which gives to the defendant in ejectment, or the statutory action in the nature of ejectment, the right to suggest upon the record that he and those whose possession he has "have had adverse possession" for three years before the commencement of the suit, and have erected permanent improvements on the land (Code, §§ 2951–54), "must be construed to mean just the same character of hostile possession as will put in operation the statute of limitations, except that it must be *bona fide* under color or claim of title;" and a purchaser from the tenant for life, though his deed purports to convey the absolute property, can not claim the benefit of the statute, in an action brought by the remainder-man within three years after the death of the tenant for life.

4.  *Substitution of complaint.*—A complaint may be substituted, when the original has been lost or mislaid, on proof of the correctness of the substitute and its substantial correspondence with the original; and a difference between the two in the description of the land sued for is no objection to the allowance of the substitute, when there is no dispute as to the identity of the land in controversy.

Appeal from the Circuit Court of Montgomery.

Tried before the Hon. Jas. E. Cobb.

This action was brought by Mrs. Lydia H. Pope and others, children of Mrs. Mildred A. and George G. Holcombe, deceased, and grandchildren of George R. Clayton, deceased, against Mrs. Sarah J. Pickett, to recover a tract of land particularly described in the complaint; and was commenced on the 26th January, 1870. The land sued for was situated in or near the city of Montgomery, in the square bounded north by Mildred street, east by Amanda street, and west by the " Old Plank-road;" and it extended 400 feet north and south, by 290

[Pickett v. Doe, ex dem. Pope.]

feet in width, through the entire square. On a former trial of the case, there was a verdict and judgment for the defendant; but the judgment was reversed by this court on appeal, and the cause was remanded, as shown by the report of the case. *Doe, ex dem. Pope v. Pickett*, 65 Ala. 487–95. On the second trial, as the bill of exceptions in the present record shows, the original complaint having been lost or mislaid, the plaintiffs asked leave to substitute a paper which was produced, and which, as one of plaintiffs' attorneys testified, " was a substantial copy of the original complaint, which he had drawn, and which contained a description of the land sued for substantially the same as contained in the original complaint." The defendant objected to this evidence, " on the ground that better evidence was obtainable ; and in support of said objection, offered in evidence the transcript of the record in this cause, duly certified by the clerk of this court, and sent to the Supreme Court on the former appeal, and which contained what purported to be a copy of the original complaint." In this original complaint, as set out in the transcript, the land was described as " commencing 600 feet *north* of the corner of Mildred street and the old plank-road, and running *north* 400 feet ;" while in the paper offered as a substitute it was described as " commencing 600 feet *south* of the corner of Mildred street and the old plank-road, and running *south* 400 feet." The court overruled the objection to the evidence, and the defendant excepted ; and this being all the evidence adduced, the court allowed the substitute to be filed as the complaint in the cause, and the defendant excepted to its allowance. The defendant then pleaded not guilty, and "suggested upon the record adverse possession for three years and the erection of permanent and valuable improvements ;" and a trial was had on issue joined on these pleas.

The case was tried on an agreed statement of facts, in substance as follows : George R. Clayton, the maternal grandfather of the plaintiffs, died in Baldwin county, Georgia, in October, 1840, being seized and possessed of the quarter-section of land in and near the city of Montgomery which embraced the premises now sued for. By his last will and testament, said Clayton devised and bequeathed all his property to his children, seven in number, and directed that it should be divided among them by an amicable allotment; and the will then contained these provisions : "Whenever the parts or shares of my children shall have been set off, allotted, or ascertained, upon division as before directed, it is my will and desire, that my daughters, Caroline, Mildred and Amanda, have each a life-estate in the respective shares falling to them, and the remainder to their children respectively, upon the determination of such life-estate. It is

[Pickett v. Doe, ex dem. Pope.]

my will, moreover, that such several life-estates as are hereby given shall in no event be subject to any debt or contract of their respective husbands, or capable of being alienated by their husbands, or in any other manner than by a decree of a court of equity, and then for the necessary support of my daughters, or either of them." Said will was duly proved and admitted to probate, before the proper court in Georgia, on the 30th October, 1840; a copy thereof, with probate, &c., "was recorded in the office of the clerk of the County Court of Montgomery county, Alabama, on the 15th June, 1841;" and on the 3d November, 1846, on the application of said Amanda and her husband (Joseph W. Wilson), said will was probated in said County Court of Montgomery." In 1842, a portion of said quarter-section was surveyed and subdivided into seven lots, for the purpose of making a division pursuant to the terms of the will, and these several portions were divided by lot among the several children. Under this division, "each of said devisees named in the will took possession of the respective lots so allotted to them respectively, said Mildred, the wife of George G. Holcombe, taking possession of lot No. 7," the premises here sued for.

On May 16th, 1845, Mrs. Holcombe and her husband sold and conveyed said land, on the recited consideration of $1,100 in hand paid, to E. S. Dargan; the deed describing the land as "Lot number seven, as laid out and surveyed by Reuben Emerson, county surveyor, being a portion of the land that was of George R. Clayton, deceased, and which lot of land was allotted to the said Mildred A. Holcombe by the commissioners appointed to divide the land amongst the heirs at law of said Clayton." The deed used the ordinary words of conveyance, and contained the following covenant of warranty: "And the said Mildred A. and George G., for themselves and their heirs, the said premises in the quiet and peaceable possession of the said party of the second part, his heirs and assigns, against the said parties of the first part, their heirs and assigns, and against all and every person and persons whomsoever lawfully claiming or to claim the same, shall and will warrant and defend." On the 1st June, 1848, Dargan and wife conveyed the land by deed, with covenants of warranty, to F. M. Gilmer; "and the defendant holds said land, by mesne conveyances with warranty, under said Gilmer." It was admitted, also, "that defendant and those under whom she holds purchased said property for full value, in good faith, and without any actual notice of the title of the plaintiff's lessors, and erected valuable improvements on said land before the commencement of this suit; that said defendant and those through whom she claims, from E. S. Dargan inclusive, held possession under their respective deeds,

claiming to be owners; that said Holcombe and wife, Wilson and wife," and the other children of Clayton, "resided in the city of Montgomery from 1842 to 1850, and were well known to said Dargan and Gilmer when they purchased as above stated." Mrs. Mildred Holcombe died in May, 1867, and the plaintiffs were her surviving children, their names and ages being stated. "It was proved, also, that said lot of land was improved by defendant's vendor, in 1852 and 1853, by the erection of a dwelling, out-buildings and fencing; that said improvements are now worth $3,000; that the rent of the premises from the commencement of the suit, with the improvements, was worth $3,000, but without the improvements not exceeding $150."

"There was no conflict in the evidence, and the parties consented that the court might charge directly on the evidence. The court charged the jury, on the request of the plaintiff, that, if they believed all the evidence, the plaintiff was entitled to recover the possession of the land sued for, and was entitled to recover whatever the evidence showed was a reasonable rent of the premises, as improved, from the commencement of the suit; to which charge the defendant excepted. The plaintiff conceded that the value of the improvements erected on the land by the defendant, or by those under whom she holds, could be set off by the jury against the rents of the premises, as they may find the same, and the court so charged the jury; to which charge the defendant excepted. The court charged the jury, also, that, under the evidence, the defendant did not hold adversely to the plaintiffs for three years next before the commencement of this suit, under the suggestion of record; to which charge the defendant excepted. The defendant requested the court, in writing, to charge the jury, that if, from the evidence, they find that the defendant and those through whom she claims, under the deeds set out in the evidence, had been in the actual possession of the premises sued for, for more than three years next before the commencement of this suit, claiming the same adversely in good faith, and that she and those through whom she claims had made valuable and permanent improvements on the land before the plaintiffs' right to the possession accrued; then the jury must find the suggestion of adverse possession true, although she and those under whom she claims bought from the tenant for life. The court refused to give this charge, and the defendant excepted to the refusal."

The admission of the evidence objected to, the allowance of the substituted complaint, the several charges given, and the refusal of the charge asked, are now assigned as error.

Watts & Sons, with whom was J. Gindrat Winter, for ap-

[Pickett v. Doe, ex dem. Pope.]

pellant.—1. The right to claim the value of permanent improvements erected in good faith, which is given by statute to the unsuccessful defendant in ejectment (Code, § 2951), is made to depend upon his adverse possession for three years before the commencement of the suit, without regard to the value of the plaintiff's claim or title, or the time when his right of action accrued. The statute does not define the meaning of the words "adverse possession," and they must taken in their common legal acceptation. One who is in possession, claiming for himself, is an adverse holder against the world.—*Riggs v. Fuller*, 54 Ala. 141; *Pillow v. Roberts*, 13 How. U. S. 477; *Saltmarsh v. Crommelin*, 24 Ala. 347. The former statute was so construed, which was substantially the same.—*Lamar v. Minter*, 13 Ala. 31; *Hollinger v. Smith*, 4 Ala. 367. That the defendant's remote vendor, Dargan, claimed under a conveyance from the tenant for life, which purported to convey the absolute property, does not change the character or nature of the possession acquired and held under it. The possession of the tenant for life is the possession of the remainder-man; and whenever the possession becomes adverse to the tenant for life, it is necessarily adverse to the remainder-man, although he has no right of action, and therefore the statute of limitations does not begin to run against him, until the termination of the life-estate. In the case of personal property, it has been several times decided by this court, a sale of the entire property by the tenant for life converts the remainder into a mere *chose in action*, and prevents the marital rights of the husband from vesting.—*King v. Broome*, 10 Ala. 819; *Walker v. Fenner*, 28 Ala. 367; *Price v. Tally*, 18 Ala. 21; *Thrasher v. Ingram*, 32 Ala. 645; *Lide v. Taylor*, 17 Ala. 270. These decisions are all based on the analogies drawn from the law of real property, and their authority has never been questioned. Under our statutes, it is true, the tenant for life, attempting to convey the fee, does not produce a discontinuance of the estate in remainder, nor work a forfeiture of the life-estate—his conveyance only passes his own estate.—Code, §§ 2192, 2196. But the statutes, while limiting and defining the estate and title of the purchaser, do not affect the character of his possession. The question of title does not enter into the question of adverse possession, and the right to claim the value of permanent improvements is not given to him who has the better title, and who does not need the aid of either. The statute is intended for the benefit of him who, without title, has made permanent improvements in good faith, believing that he had title. It is a remedial statute, resting on the broadest equity, and should receive the liberal construction which similar statutes have received in other States.—*Longworth*

[Pickett v. Doe, ex dem. Pope.]

*v. Wolfington*, 6 Ohio, 10; *Davis v. Powell*, 13 Ohio, 320; *Dothage v. Stewart*, 35 Mo. 253; *Wales v. Coffin*, 100 Mass. 177; *Bright v. Boyd*, 1 Story, C. C. 495; 2 *Ib.* 605; *Pugh v. Bell*, 2 T. B. Monroe, Ky. 130; *Sanders v. Wilson*, 19 Texas, 194; *Strong v. Hunt*, 20 Vermont, 617; *Whitney v. Richardson*, 31 Vermont, 300; *Ross v. Irving*, 14 Illinois, 176; *Jones v. Perry*, 10 Yerger, 59; *Bedell v. Shaw*, 59 N. Y. 49; *Kraus v. Means*, 12 Kansas, 338; *McLaughlin v. Barnum*, 31 Md. 425; *Bellows v. McCartee*, 20 N. H. 515; *Plimpton v. Plimpton*, 12 Cush. Mass. 458; *Christie v. Gage*, 71 N. Y. 189; *Cole v. Johnson*, 53 Miss. 102; *Green v. Dixon*, 9 Wisc. 539–40; *O'Byrne v. Feely*, decided by the Supreme Court of Georgia in January, 1883.

2. The substituted complaint was an entire departure from the original complaint, claiming an entirely different tract of land; one lying north, and the other south of a specified line. It was equivalent to the commencement of a new action, and ought not to have been allowed.—10 B. Mon. 88; 3 Ired. Eq. 35; 11 Geo. 594; *King v. Avery*, 37 Ala. 169; *Mohr v. Lemle*, 69 Ala.

H. C. TOMPKINS, with whom were R. M. WILLIAMSON, and P. T. SAYRE, *contra.*—1. To entitle the defendant in ejectment to claim the value of permanent improvements erected on the land, he must show that he and his vendors or ancestors have had "adverse possession" for three years before the commencement of the suit. The adverse possession here meant, unlike that which would entitle him to claim the benefit of the statute of limitations, must be *bona fide.*—*Lamar v. Minter*, 13 Ala. 31; *N. O. & S. Railroad Co. v. Jones*, 68 Ala. 48. The deed of Holcombe and wife to Dargan refers to Clayton's will as the source of title, and charges the purchaser with knowledge of its provisions (*Wilson v. Wall*, 34 Ala. 288; *Johnson v. Thweatt*, 18 Ala. 741; *Witter v. Dudley*, 42 Ala. 616); and having this constructive notice of the rights of the remainder-men, the purchaser's claim was not *bona fide* as against them. Nor could his possession become adverse to the remainder-men, during the continuance of the life-estate. The conveyance of the tenant for life, whatever its words or form, conveyed only his interest, and had no effect on the estate or rights of the remainder-men.—Code, § 2196; Clay's Digest, 156, §§ 30, 35; *Smith v. Cooper*, 59 Ala. 494; *Pope v. Pickett*, 65 Ala. 487. The possession of the tenant for life was the possession of the remainder-man, and could not become adverse to him; and the purchaser from the tenant for life acquired and succeeded only to his estate and possession. An adverse possession implies an ouster, or disseizin; and there can be

[Pickett v. Doe, ex dem. Pope.]

no adverse possession against a person who has no right of possession.—*Arnold v. Stevens*, 35 Amer. Dec. 309; 1 Lomax Dig. 622, mar.; Burrill's Law Dic., tit. *Adverse possession;* Sedgw. & Wait's Trial of Titles, § 730; *Dwyer v. Schaefer*, 55 N. Y. 446; *Clarke v. Hughes*, 13 Barb. 147; *Grant v. Townsend*, 2 Hill, 554; *Varney v. Stevens*, 22 Maine, 331. At common law, a tenant for life, having erected improvements, can not claim for them against the remainder-men. *Merritt v. Scott*, 81 N. C. 385; 5 Rich. Eq. 301; 1 Washb. Real Prop. 95, 24 *a.*

2. The substituted complaint was properly allowed. If the description of the land contained in the transcript had been taken, it might have been corrected on motion, the misdescription being apparent on its face, and there being no dispute as to the identity of the lands sued for.

SOMERVILLE, J.—The action is ejectment, brought by the plaintiffs as *remainder-men* of the property sued for, claiming in view of the termination of the precedent estate by the death of the life-tenant. The defendant claims title through various mesne conveyances, running back to May, 1845, all of which, including the original deed from Mrs. Mildred Holcombe, the life-tenant, purport to convey the entire fee with warranty of title. It is not denied that these several conveyances passed to defendant, and those through whom she claims, only the life-estate, and that they did not operate to convey or affect the estate in remainder. This point was so adjudged when this case was last tried before us. *Doe, ex dem. Pope v. Pickett*, 65 Ala. 487; see *Smith v. Cooper*, 59 Ala. 494, and authorities cited.

The chief point of controversy relates to a claim for permanent improvements, preferred under the provisions of sections 2951–2954 of the Code of 1876.—Rev. Code, 1867, §§ 2602–2605; Code, 1852, §§ 2201–2204. No contention arises as to the right of the defendant to set off the value of the improvements, in reduction of the *rents* recoverable by the plaintiffs. It was conceded that she had "possession under color of title, in good faith;" and this fact operated to acquit her of liability for damages, or rent, for more than one year before the commencement of the suit, under the express provisions of the statute.—Code, 1876, § 2966. The whole question in the case is, was the *possession* of the defendant *adverse* to the remainder-men, *before the termination of the life-estate?* The allowance for permanent improvements is made by the statute to depend upon the contingency, that the defendant in ejectment, and "those whose possession he has," should, for three years next before the commencement of the suit, have had *adverse*

[Pickett v. Doe, ex dem. Pope.]

*possession*" of the premises sued for, or in controversy. Code, § 2951.

It is contended by appellant's counsel, that this court is committed to the view, that one who claims the full title of property, under a deed purporting to be a conveyance of the perfect title by the tenant for life, holds adversely to the remainder-man. In support of this view we are referred to the case of *King v. Broome*, 10 Ala. 819, and other subsequent cases following that decision.— *Walker v. Fenner*, 28 Ala. 367 ; *Thrasher v. Ingram*, 32 Ala. 645 ; *Price v. Tally*, 18 Ala. 21. The point settled in *King v. Broome, supra,* seems to be, that where a vested remainder is created in *personal property,* and the tenant for life sells the entire property to a stranger, this wrongful act operates as a discontinuance of the remainder, and converts it into a *chose in action.* Without stopping to examine the doubtful *reasoning* upon which this case was made to stand, and to which more recent decisions seem repugnant, we may observe, that it has never been adjudged to have any application to *real property.* There is something in the nature of personal property, with its portable and perishable character, which essentially distinguishes any estate or interest in it from a like estate or interest in realty. A sale of personal property, by one having a life-estate, it is true, has been adjudged not to affect the title of the remainder-man to his prejudice.—*Thrasher v. Ingram*, 32 Ala. 646 ; *Jones v. Hoskins*, 18 Ala. 489. And the same is true of real estate, as we have already seen.—*Smith v. Cooper*, 59 Ala. 494 ; *Pope v. Pickett, supra.* It was no doubt correctly held, too, in *Nations v. Hawkins*, 11 Ala. 859, that, if a life-tenant of a personal chattel disposes of it as his absolute property to a third person, one who owns the estate in remainder can not maintain *trover* for the conversion ; but the sole reason assigned was, that he had no right to the immediate possession, which was a necessary pre-requisite to the maintenance of the action. It would seem, however, that any unlawful exercise of dominion by the purchaser over an estate in remainder, created in personal property, resulting in its injury or destruction, might be regarded as a *tort,* for which an action on the case would lie in behalf of the remainder-man. It is so intimated in the case to which we have last adverted, and the suggestion accords with the assertion made in *Broome v. King*, 10 Ala. 823, *supra,* that "the estate of a remainder-man [in a personal chattel] is a subject to be turned into a mere right of action, as any other vested estate." It is the alleged discontinuance of the remainder as such which operates to transmute its legal nature ; and this is produced by a tortious and unauthorized exercise of dominion over it, at war with the rights of the owner. It is manifest that this can not be the

case with real property. No sale of it by a life-tenant can in any manner affect, or change the nature or *status*, of the estate in remainder. It is the effect of our statutes now, and was so at the time the various deeds were made to the property in controversy, that a conveyance made by a tenant for life, purporting to convey a greater interest than he owns, does not work a forfeiture of his estate, but passes to the grantee the property and *possession* of the grantor, all warranties by him being declared void as against the remainder-man.—Code, 1876, §§ 2192, 2196; Code, 1852, §§ 1313, 1317; Clay's Dig. 156, §§ 30, 35; Aiken's Dig. 94, §§ 32, 37; *Pope v. Pickett*, 65 Ala. 487. There can be no possible dealing with the remainder, by the tenant for life of real estate, which can operate to discontinue it, or change it into a *chose in action*. If he be guilty of waste, by doing any act to the lasting injury of the inheritance, the intervention of a court of equity is deemed adequate to his protection. Its distinguishing characteristic, like that of all other realty, is its immobility, so that it can not follow the person, as chattels may do. It is also permanent and imperishable in its nature, so that no waste or trespass upon it can change its legal *status* or relation, except as against one whose right of possession is infringed or involved. If we concede, therefore, that it is possible, strictly speaking, for an estate in remainder in *personal chattels* to be held adversely to the remainder-man, before the death of the life-tenant, the rule does not necessarily apply to *real estate*. Without seeking to disturb the authority of *King v. Broome, supra*, and the other cases based on it, we decline to extend the principle to cases involving real estate. It must be confined to personal chattels, or at least to property other than realty.

We recur to the question, Was the *possession* of the appellant in this case *adverse* to the plaintiffs, within the meaning of the statute, before the death of Mrs. Holcombe, the tenant for life, which occurred in May, 1867? There is much antiquated learning concerning the doctrine of *adverse possession* and *disseizin*, which was applicable to tenures existing under the Feudal System, and into a discussion of which we do not propose to enter. It was to the inherent difficulties of this subject that Lord Mansfield referred, when he declared in *Atkyns v. Horde* (1 Burr. R. 60), "the more we read, the more we shall be confounded." In modern times, however, and under our system of land tenures, *adverse possession* is now understood to denote, as observed by Mr. Angell, "a *disseizin* upon which an adverse title is founded, the old term 'disseizin' being expressive of any act, the necessary effect of which is to divest the estate of the former owner."—Angell on Lim. § 385; Preston on Abs. Title, 383. A disseizin, anciently, was nothing

[Pickett v. Doe, ex dem. Pope.]

less than some act or mode by which the disseizor acquired the tenure, and *usurped* the place and feudal relation of the tenant. 2 Smith's Lead. Cases, 396. *Disseizin* is synonymous with *adverse possession*, and is so generally considered.—Tiedeman on Real Prop. § 693 ; *Magee v. Magee*, 37 Miss. 151. Mr. Preston defines it as "an ouster of the rightful owner of his seizin."—2 Prest. Abst. 284. It is defined by Littleton to be "where one enters intending to usurp the possession and to *oust* another of his freehold."—Co. Litt. 153, 238*a**.

An adverse *possession*, it will thus be seen, is something more than a mere possession, accompanied with hostile claim of ownership. It is very true that, ordinarily, an actual occupancy of lands, accompanied with an open, notorious and uninterrupted claim of ownership, with intention to claim hostile to the title of the real owner, constitutes adverse possession. But this is so, only where the possession of the occupying claimant is hostile to the claim or right of *possession* of some one else. If there be no other person entitled to present possession, there can be no repugnancy, actual or constructive, between the mere possession of the occupant and the rights of any one else. A possession, to be *adverse*, must, in other words, operate to *disseize*, or *oust*, some other claimant of his possession or right of possession.—Angell on Lim. § 389 ; Sedgw. & Wait's Trial of Titles, § 729 ; Tiedeman on Real Prop. § 693. Hence, an adverse possession has been defined to be, an occupancy "which disclaims the title of the *negligent* owner."—Walk. Amer. Law (5th Ed.), 339–40. It need not, of course, be actual, so as to partake of the nature of physical force, but may as well be a constructive disseizin or ouster. But, whether the one or the other, any possession, to be adverse, must be *wrongful* as against some one who claims to be or is legally entitled to the possession. It must be an act so far operating to the prejudice of another as to constitute the basis of an action predicated on its wrongful or tortious nature. There can not be two hostile *possessions*, of the same property at the same time, although there may be many hostile claims. One must operate to overcome and displace the other, if the two be adverse. We are unable to conceive of an adverse possession which is not *exclusive* of the rightful owner, or does not operate to encroach upon his right of possession so as to oust or disseize him—Sedgw. & Wait's Trial of Titles, § 752 ; Angell on Lim. § 386.

The principle is everywhere well settled, that there can be no adverse possession, or claim of ownership, by a tenant for life, which will operate to bar the estate in remainder, under the influence of the statute of limitations, which commences to run only from the death of the life-tenant.— *Wells v. Prince*,

9 Mass. 509; *Doe v. Danvers*, 7 East, 321; Angell on Lim. § 415. The reason is manifest. The possession of the life-tenant must be taken to be conclusively friendly to the rights of the remainder-man. The hostility of his *claim* can not, in the absence of a hostile *possession*, be considered as an invasion of the rights of the remainder-man, and, for this reason, it can not be the ground or *gravamen* of a legal action. It is, therefore, commonly said, that the possession of one is that of the other. It is an axiomatic proposition, which requires no reasoning in its support, that there can be no incompatibility between a right which exists and one, so to speak, which does not exist. The tenant for life is entitled to actual possession of the premises of which he is enfeoffed; the remainder-man is *not* so entitled, as long as the life-tenant is living. The actual possession of the former, therefore, is rightful, and not wrongful. It is not adverse to any right of the remainder-man, but perfectly compatible with all of his rights. The latter having no right of possession, either actual or constructive, can not be *disseized*, or *ousted*, in any proper acceptation of these words.—Tiedeman on Real Prop. § 400; 2 Wash. on Real Prop. 555. In accordance with these views, we find that the most approved definitions of an adverse possession involve not only the idea of an actual, visible and exclusive appropriation of land, accompanied with an intention, openly avowed, to claim against the rightful owner, but to hold against one who is *seized*.—Angell on Lim. § 390; 2 Smith's Lead. Cases, 396; Sedgw. & Wait's Trial of Titles, § 730.

Our conclusion is, that the *adverse possession* designated in section 2951 of the Code must be construed to be just the same character of hostile possession as will put in operation the statute of limitations, except, as has been adjudged, that it must be *bona fide* under color, or other claim of title—a feature of claim not essential to perfect a bar under the statute of limitations, except in cases of constructive possession, as distinguished from an actual possession—a *possessio pedis*.—*The N. O., &c., Railroad v. Jones*, 68 Ala. 48; Sedgw. & Wait's Trial of Tit. § 775; *Smith v. Roberts*, 62 Ala. 83.

In view of this conclusion, the defendant, not being in adverse possession of the premises sued for, can derive no aid from the statute, in support of her claim for permanent improvements. Apart from the influence of the statute, it is well settled, upon principles too well defined to require discussion, that improvements put on land by a life-tenant, during his occupancy, constitute no charge upon the land, but pass to the remainder-men.—*Merritt v. Scott*, 81 N. C. 385; 2 Perry on Trusts, § 546.

The various decisions to which we have been cited by the

[Preston & Co. v. Ellington; same v. Daniel.]

appellant's counsel, in support of his views, are constructions of statutory provisions in other States, which are essentially variant· in meaning and phraseology from our own. Most of these "betterment acts," if not every one, to a construction of which we have been referred, seem to require only an occupancy, accompanied with a *bona fide* claim of title, and not an adverse *possession*, as our own does. This distinction is ˙the pivotal point upon which the present case is made to turn.

There was no error committed in allowing the substituted complaint to be filed. It operated, at most, only as an amendment of the original complaint, and varied from it only as to the *description* of the land sued for by the plaintiffs. We can not see, from the entire record, that the amended description was intended to include premises other and different from those described in the original complaint, especially in view of the fact that the matter of identity is always open to the light of explanation by extrinsic evidence. The whole correction made seems to have been the substitution of *South* for *North*, which may have been a mere clerical error.—*Russell v. Erwin*, 38 Ala. 44; Sedgw. & Wait's Trial of Titles, §§ 464, 459. A correction in the description of the property sued for should not be regarded as the substitution of a new cause of action, unless it appears to be such a wide departure from the former description as to introduce a claim to other and different premises not intended to be previously claimed.—*Dowling v. Blackman*, 70 Ala. 303, and cases cited.

The judgment of the Circuit Court is affirmed.

STONE, J., not sitting.