## MAGEE *VS.* TOLAND.

1. Personal property is divided into things in *possession* or in *action,* and property in things in possession, is either *absolute* or *relative.*

2. A bailment is a qualified, limited, or special property, in a thing capable of absolute ownership.

3. Neither the bailor or bailee of a personal chattel has an absolute property in the chattel. The property in both is qualified, and each of them is entitled to his action, if the goods be damaged or taken away. The bailee, on account of his possession, and the bailor because the possession of the bailee is immediately his possession.

4. A chose in action, is any right to damages, whether arising from the commission of a tort, the omission of duty, or the breach of a contract.

5. Possession of lands by a guardian, in *socage,* is the possession of the ward : The possession of a bailee, is the possession of the bailor, and the possession of a guardian, is also possession of the ward.

6. The possession of the guardian of an infant female ward, is the possession of the ward ; and if the ward marry, the possession, *eo instanti,* is transferred to the husband, and the bailment is then in possession of the husband, in point of law, as much, as it could afterwards be, by an actual *manucaption.*

7. The actual enjoyment of a chattel, which accrues to the wife before marriage, is not necessary to vest her interest in the husband.

8. If a chattel be found, and not converted to the use of the finder ; or if it be hired, or loaned, or otherwise bailed ; it does not thereby become a chose in action ; and if it belong to a woman who marries, her right immediately vests in the husband, at least so far, that if she dies it will survive to him.

Magee *vs.* Toland.

Error to the Circuit Court of Greene.

Detinue for a slave. To the declaration, defendant plead *non detinet*, and the jury found a special verdict, as follows:

That on the first of January, eighteen hundred and thirty five, the slave was, and for a long time previously had been, the property of Jane Carnathan, then a minor and unmarried, and was in possession of her guardian, George Hays: That on the said first of January, eighteen hundred and thirty-five, the slave was hired by the guardian to defendant, John T. Magee, for the term of one year, and was delivered to defendant: That on the eleventh of June, eighteen hundred and thirty-five, Jane Carnathan intermarried with James Toland, the plaintiff: That on the twenty-sixth of August, eighteen hundred and thirty-five, said Jane died without issue, leaving the plaintiff, and the following brothers and sisters, to-wit, George Carnathan, Margaret Stewart, and Mary Magee, wife of defendant, John T. Magee, surviving: That from the first of January, eighteen hundred and thirty-five, as aforesaid, said John T. Magee held possession of the slave, by virtue of the hiring aforesaid, and did not assert or claim any other right, title or interest in the slave, adverse to the right of said Jane, and the plaintiff, to the slave: That from the first of January, eighteen hundred and thirty-five, until the death of said Jane, on the twenty-sixth of August, eighteen hundred and thirty-five, neither the said Jane, nor the plaintiff, James Toland, ever had the *actual* possession of the slave: That from the said first of January, eighteen hundred and thirty-five, until the present time, the slave had

Magee *vs.* Toland.

been, and remained, and was, at the present time, in the possession of the defendant : That defendant had never been appointed administrator of said Jane : That on the first of October, eighteen hundred and thirty-six, plaintiff demanded the slave of defendant, who refused to deliver him to plaintiff, and that the value of the slave was five hundred dollars.

But because the jury were not advised whether, under the facts, the plaintiff was, by law, entitled to the slave ; if the court should be of opinion that the plaintiff was entitled to the slave, then the jury found for the plaintiff: *secus,* for the defendant.

The court being of opinion, under the facts, that the plaintiff was entitled to the slave, judgment was rendered accordingly ; and to reverse this judgment, the writ of error was sued out, and the rendition of judgment assigned as error.

*Erwin,* for the plaintiff in error.
*Jones,* contra.

GOLDTHWAITE, J.—It is obvious that the special verdict presents the question, whether the possession of the slave in controversy by the bailee of the guardian of the wife, at the time when the marriage was contracted, was such a possession by the wife as to transfer the property to the husband, by the mere act of marriage?

The solution of this question involves an inquiry into the rights of property acquired by a husband, which attach to him immediately, and in consequence of the marriage. The plaintiff in error concedes the general rule to be, that the husband, in virtue of the marriage, ac-

quires an immediate property in the *choses in possession* of the wife, but he denies that any other than an *actual* possession can authorise the application of the admitted rule.  This is certainly an ingenious distinction, and deserves to be well examined, as its adoption must have the effect materially to abridge the rights of the husband, as generally understood.

Personal property is divided into things in *possession* or in *action ;* and property in *possession* is again divided into two sorts—*an absolute* and *a qualified* property.— The first of these sub-divisions, is the one which the plaintiff in error denominates as an actual possession—it being where a man has solely and exclusively, the right; and also the *occupation* of any moveable chattel, so that it can not be transferred from him, or cease to be his, without his own act or default.  A *qualified, limited,* or *special* property, may arise, either from the nature of the thing owned, or from the peculiar circumstances and situation of its owner.  Many things may be owned, which are incapable of actual occupation, and absolute dominion at all times, such as wild beasts or birds, but partially reclaimed. and not domesticated.

But the more important distinction of *a qualified, limited,* or *special* property, grows out of the peculiar circumstances of the *owner,* when the *thing* itself is very capable of absolute ownership.  Such is the case of a *bailment,* or delivery of goods to another, for a particular use or purpose : there is no *absolute property* in either the bailor or the bailee, for the bailor has only the right, and not the immediate possession : the bailee has the possession, and only a temporary right.  But it is a qualified

property in them both, and each of them is entitled to an action, in case the goods be damaged or taken away : the bailee, on account of his immediate possession ; and the bailor, because the possession of the bailee is immediately his possession also. Such are the views of Blackstone, in relation to personal property in possession. His definition of a *chose in action* considered as property, is equally satisfactory and precise: it is where a man has not the occupation, but merely a *bare right* to occupy the thing in question, the possession whereof may however be recovered by a suit or action at law ; from whence the thing so recoverable is a thing or *chose in action*. He considers that all *property in action* depends upon contracts, either express or implied, which he asserts to be the only regular means of acquiring a *chose in action*—(2 Black. Com. 388 to 396.) It will be remembered, that this learned author is treating of the nature of *property* in things personal, and therefore does not enter into any discussion of the distinction between rights of action for injuries done : he is only speaking of *choses in action* as property, and in this view no objection can be taken to the definition given, as we cannot conceive that one can have a *property* in a wrong done, or injury suffered.

In its more enlarged sense, a *chose in action* may be considered as any right to damages, whether arising from the commission of a tort, the omission of a duty, or the breach of a contract. And in this sense, it is considered by most other elementary writers—(Bro. Title, *chose in action*, Lilly's Abr. 264.)

It will be unnecessary to ascertain with exactness and precision, the nature of a *chose in action* or a right of ac-

Magee *vs.* Toland.

tion, if the slave in dispute is within the definition of *property in possession*, as given by the most approved elementary author, and fully supported by the authorities which he cites.

It appears that the slave was owned by the wife previous to, and at the time of the marriage, and was in the possession of the defendant as a bailee for hire, holding under the guardian of the wife.   The authority already referred to, expressly states, that the possession of the bailee is also that of the bailor, and it only remains to show, that the possession of the guardian is also the possession of the ward.   Independent of the manifest reason, that such a rule should obtain, we find no direct decision on the precise point, in relation to *personal property*, but the authorities are numerous and concurrent, that the possession of lands by the guardian in socage, is the possession of his ward, and that no entry is required to be made by him—(Coke on Litt. 15, a,—Newman vs. Newman, 3 Wils. 516; Doe vs. Keene, 7 Term Rep. 386.) No reason is conceived by the court, why the possession of the guardian should not be held as the possession of the ward, in relation to all personal chattels capable of possession, as it is clearly a title derived under the ward, and held solely and exclusively for his benefit.   The guardian has an interest in the thing possessed, without which he would not be able to sustain an action; but such interest is consistent with, and ancilliary to the property of the ward,—it never has been supposed otherwise.

As the possession of the defendant below was the possession of the wife, at the time when the marriage was

8 P.                           6

contracted, it results that the property in the slave in question, was transferred to the husband at the instant of marriage, and was then as much in his possession in point of law, as it could afterwards have been by an actual *manucaption.*

It is, however, contended, that whatever may be the rule of the common law on this subject, this case must be governed by a previous decision of this court, which is said to decide the identical question here presented. The case referred to, is Johnson vs. Wren, 3 Stewart, 172. Without undertaking to pronounce what weight that case ought to have on one presenting a similar state of facts, we content ourselves with observing, that there the question of possession was left to the jury on the evidence, and was not before this court on any exception to the charge of the Circuit court. It is true, that the court seemed to consider the estate, in the slaves, as one in action and not in possession; but as the point did not arise in this court, we do not feel inclined to consider it as closing the investigation in this case. Another distinction between that and this case, is to be found in the fact, that there, the wife, and here, the husband is the survivor. Neither does this case resemble, in any respect, that of Mayfield vs. Clifton, (3 Stewart, 375,) which was decided on the conflicting claims of a husband and the children of his deceased wife, to her undivided distributive share of the estate of her former husband.

We will now ascertain how far the principle we have recognised as applicable to this case, has the sanction of adjudicated cases in this country in its support, remarking, that there is a total absence of cases on this subject in the English reports.

In the case of The Ordinary vs. Geiger and wife, reported from the MS. reports of Judge Brevard, in 2 N. & McCord, 151—the facts were as follow: The mother of Geiger's wife, while sole, made and executed a deed of gift of certain negroes, to her four children, jointly. Afterwards, one of these children married Geiger, the intestate. On the marriage, one of the negroes given as aforesaid, was sent with her on her going to live apart from her mother, and remained with her ever since. No regular partition was ever made of the property between the donors. After the death of Geiger, his widow intermarried with the other defendant, and they jointly administered on his estate, and in the inventory returned to the ordinary, made no mention of the negroes given as aforesaid. The question was, whether this omission was a breach of the condition of the administration bond. The court were all clear, that a *right of possession,* vested instantly on the execution of the deed of gift, and that the female defendant was entitled, as a joint lineal to the property given, and therefore that on her intermarriage with Geiger, the property and right of possession which she had, vested in him, and became a part of his personal estate, and ought to have been returned as such in the inventory.

In Davis vs. Rhame, (1 McCord's Chan. Rep. 195,) the slaves had been allotted by partition to Miss Davis, (afterwards Mrs. Clark)—She was then a minor, and her slaves went into the possession of Rhame, her guardian, who dying, his executor took possession of them. *After the death of Mrs. Clark,* her husband obtained possession of them. The court decided that *the possession of the*

Magee vs. Toland.

*guardian was the possession of the ward, and consequently her husband's.*

The same principle was recognised and confirmed in Saussey vs. Gardner, (1 Hill, 191.)

In North Carolina, the same principle has been acted on, in the case of Armstrong vs. Simonton's adm'r, (2 Taylor, 266; S. C. 2 Murphy, 351.) The slave sued for was owned by the plaintiff, whose daughter intermarried with Simonton, and to whom, residing in Georgia, she loaned or gave a slave. After the loan or gift to Simonton, the plaintiff intermarried with Abel Armstrong, who died before Simonton, and before this suit was commenced. The judge who tried the cause, instructed the jury, that if the transaction was a loan, determinable at the will of the lender, *and there was no adverse possession set up*, the property vested absolutely in Abel Armstrong, on his intermarriage with the plaintiff, and that his executors could alone recover it. This opinion was pronounced correct by the Supreme court.

In Kentucky, in Banks' adm'r vs. Marksberry, (3 Litt. 275,) the facts were as follow : In seventeen hundred and seventy-three, Samuel Marksberry executed a deed, by which he gave a female slave to his daughter, Rachel, but by the terms of the deed, was to retain possession during his life. Rachel intermarried with William Banks, in seventeen hundred and ninety, and after having several children by him, of whom the plaintiff was one, died in seventeen hundred and ninety-eight. Her father, Samuel Marksberry, the donor, died some years afterwards. The plaintiff, in eighteen hundred and twenty one, took administration on the estate of Rachel

Magee *vs.* Toland.

Banks, his mother, and instituted the suit to recover the slaves descended from the one given to her. It was ruled, that the slaves were not *choses in action*, and that the interest of Rachel vested in her husband, although she never had the possession, and died before she was entitled to it by the terms of the gift. The language used by the court is peculiarly appropriate, and may be quoted to illustrate this case. "The slaves were in the possession of the donor, but his possession was consistent with the title of Mrs. Banks, and not adverse. There is no proof that he ever did, prior to her marriage, set up any claim to the slaves, incompatible with the deed of gift; and under that he had only a right to the use of them for life, while the absolute property in fee belonged to Mrs. Banks. She had, in fact, the general, and he only a special property in the slaves; and it is a known rule of law, that the general property of a chattel, draws to it the possession. She was not indeed in the actual enjoyment of the slaves, but surely every chattel, of which the owner is not in the actual enjoyment, cannot be denominated a *chose in action*. Nor is such actual enjoyment of a chattel which accrues to the wife before marriage, necessary to vest her interest in the husband. If a chattel be found, and not converted to the use of the finder, if it be hired or loaned, or otherwise bailed, it does not thereby become a *chose in action*, and if it belongs to a woman who marries, her right immediately vests in the husband, at least so far, that if she dies, it will survive to him."

Similar decisions have obtained in Virginia, from the earliest establishment of courts. (See Dade vs. Alexan-

der, 1 Wash. 39—cited with other cases with approbation, in Wallace vs. Taliaferro, 2 Call, 470. See also in connection with the subject matter, Doe vs. Polgrean, 1 Hen. Black. 535; Coke Litt. 351, a; 3 Term Rep. 631; Crozier vs. Bryant, 4 Bibb, 174; Pinkard vs. Smith, Littell's Selected Cases, 331.)

Such a concurrence of authority, in so many of the States, holding the peculiar description of property, which is oftener the cause of a qualified or special estate, than any other description of personal chattels, requires the strongest reasons to be shewn for a departure from the general rule. None such have been, or in our opinion can be, shewn.

The judgment of the Circuit court is affirmed.