138 So. 830

## RAINER LUMBER CO. et al. v. HICKS.

### 4 Div. 597.

Supreme Court of Alabama.

Dec. 17, 1931.

Rehearing Denied Jan. 21, 1932.

A. G. Seay, of Troy, for appellants.

M. A. Owen and J. C. Fleming, both of Elba, and M. S. Carmichael, of Montgomery, for appellee.

KNIGHT, J.

J. W. Hicks, as receiver of the insolvent Elba Bank & Trust Company, filed his bill in the circuit court of Coffee county against Rainer Lumber Company and others, seeking to recover the assets and properties of the Rainer Lumber Company, and their application to the payment of the general indebtedness of the Elba Bank & Trust Company, which assets and properties the complainant avers were, in equity, the property of the insolvent bank, and which had been by Y. W. Rainer and others wrongfully diverted. It is averred that Y. W. Rainer was at the time, and had been for a number of years prior thereto, the president of the bank and in the active charge of its affairs, before the same was taken over for liquidation by the superintendent of banks.

It appears from the bill, as originally filed, that the Rainer Lumber Company is a corporation, and that the directors of the bank, with the exception of C. E. Dorsey and W. P. Windham, were the stockholders designated in the articles of incorporation of this lumber company. It appears also that the said Dorsey was a large stockholder in, and the said Windham, a heavy debtor to, the said bank.

It also appears from the original bill that the Elba Bank & Trust Company, during the years preceding its failure, had acquired from Windham and others a large amount of property, including gristmills, sawmills, real estate, and standing timber. With this property on its hands, the bank, in the very nature of things, saw that it would be embarrassed in any attempt that it might make to operate these different businesses, and it undertook to free, in some measure, its banking business from the very just criticism that might arise. So it was conceived to be the prudent and wise thing to do, to secure the incorporation of a concern to take over these properties. This was done, resulting in the incorporation of the Rainer Lumber Com-

pany, which thereupon took over the properties described in paragraph five of the bill.

It also appears from the averments of the bill that the Elba Bank & Trust Company undertook to buy and sell commercial fertilizers during the years next preceding its failure, and, to carry on this business, it conceived the idea of using the name of Rainer & Co. as a trade-name, and it was under this name that the bank became indebted to the Standard Chemical Company, the Virginia-Carolina Chemical Company, and to the Home Guano Company, Inc. But under whatever name contracted, it was the debt of the bank. The Windham Company had no properties. It seems that the indebtedness to the three last-named companies was large.

After the state banking department took over the Elba Bank & Trust Company, it seems that Y. W. Rainer, the president of the bank at the time of its failure, entered into a deal with the respondents Standard Chemical Company, Virginia-Carolina Chemical Company, and with the Home Guano Company, by which he undertook to deliver and convey to the three named fertilizer companies, or to two of them, with the right in the Home Guano Company to participate in the benefits of the transfer upon certain conditions, all the properties nominally standing in the name of the Rainer Lumber Company, and also transfer and assign to them the entire capital stock of the Rainer Lumber Company. All this was done and accomplished while the Elba Bank & Trust Company was in the hands of the state banking department for liquidation. It is also made to appear that the next day after this transfer was made, by a separate agreement entered into by and between the said Y. W. Rainer and the fertilizer companies, Rainer was given the entire possession, control, and management of the properties, and was to receive reasonable compensation for his services to the fertilizer companies.

The purpose, among others, of the bill is to recover these assets so turned over by Rainer to the fertilizer companies, and to make them available in the liquidation of the affairs of the bank, and to require the fertilizer companies to submit to ratable payment of their claims along with the general creditors of the bank.

Numerous grounds of demurrer were interposed to the bill as amended, and all (with a few exceptions which go to that part of the bill which seeks the appointment of a receiver) go to the general equity of the bill. The chancellor sustained the equity of the bill, and overruled the demurrers, and, from this decree, the present appeal is prosecuted.

The bill avers the insolvency of the Elba Bank & Trust Company, and knowledge of this fact is charged to the Standard Chem-

ical Company, the Virginia-Carolina Chemical Company, and to the Home Guano Company at the time that Rainer, the theretofore president of said bank, attempted to transfer the properties in question to these parties, and any attempt on the part of the fertilizer companies to acquire the property in preference and to the exclusion of the other creditors, cannot, upon proper and timely attack, be allowed to stand. It is averred that the assets of the Rainer Lumber Company are the property of the Elba Bank & Trust Company, then in the hands of the state banking department, and which department was then proceeding to administer its affairs in order to make distribution amongst the general creditors of the bank. These assets by force of the statute constituted a trust fund. Code, § 7062; Standard Chemical & Oil Co. v. Faircloth, 200 Ala. 657, 77 So. 31.

Confessedly, from the averments of the bill, as amended, the respondents knew that the directors of the Elba Bank & Trust Company had turned over the properties and affairs of the bank to the state banking department; that this department had taken possession of the bank's affairs, and was administering same; that the bank was insolvent. The respondents, under the averments of the bill, were familiar with the status of the bank, and that every item of its property, of whatever consisting, and wheresoever located, was impressed with a trust for the payment of the debts of the bank. Notwithstanding all this, it is charged, in effect, that the president of this insolvent bank attempted to convey a large part of the assets of the bank to the respondents Standard Chemical Company, Virginia-Carolina Chemical Company, and to the Home Guano Company, and that these creditors, with knowledge of the insolvency of the bank, and that it was then in the hands of the superintendent of banks for liquidation, received the same.

Under the law, the superintendent of banks is the statutory receiver of the properties of state banks in forced liquidation, and as such is entitled to the possession of the properties of such banks, and the right to marshal all assets and to liquidate the same for the benefit of creditors. Green, Supt. of Banks v. Smith et al., 221 Ala. 484, 129 So. 92. Eo instanti, upon the assuming of control and possession of the affairs of a state bank by the superintendent of banks for liquidation purposes, in cases of insolvency, the receiver of such bank succeeds to the properties of such insolvent institutions under the statutes, and the courts will not tolerate any interference with the rightful possession of the superintendent as such statutory receiver. The orderly and due administration of the trust requires that the superintendent shall be thus protected. A race of diligence between creditors, in collusion with former officers of the failed institution, will not be permitted. When an attempted interference occurs, a court of equity, upon proper and timely application of the receiver, will assume jurisdiction.

While the bill of complaint as last amended is unduly long, somewhat involved, and lacking in that clearness of statement which is always to be desired, yet its essential averments are sufficient to make out a case for equitable relief, and was not subject to any grounds of demurrer interposed, and the chancellor correctly overruled the demurrer.

Affirmed.

ANDERSON, C. J., and THOMAS and BROWN, JJ., concur.