144 So. 576

### HUNTER et al. v. JAMES.
### 2 Div. 20.

Supreme Court of Alabama.
Nov. 25, 1932.

Dunn & Westbrook, of Meridian, Miss., and Haralson & Hall, of Hattiesburg, Miss., for appellants.

611

Gray & Dansby, of Butler, and John S. Tilley, of Montgomery, for appellee.

KNIGHT, J.

Will Hunter, a World War soldier, died August 15, 1918, while still in the military service of the United States. His father, Robert Hunter, was the sole beneficiary in a war risk insurance policy issued by the government upon the life of Will Hunter in the sum of $10,000. The father died in 1927, but before his death the insurance money due under the policy had been considerably reduced by monthly payments to the father. Upon the death of the father, James R. McDaniel was duly appointed administrator of the estate of the deceased soldier, and the balance due under the policy, amounting to $6,130 was paid by the government to this administrator.

The deceased soldier left surviving him no children or their descendants, and no brothers or sisters, or their descendants, and, so far as the record discloses, he left no widow, and it appears that his father, the said Robert Hunter, was his sole surviving parent. It also appears that the appellants, Luck Hunter, Seaburn Hunter, Lucy Hunter McRay, and Ellis Hunter, uncles and aunts of the dead soldier, survived him, and they now insist that they, and they alone, are entitled to the insurance money now in the hands of the administrator for distribution under the acts of Congress, which limit the class of persons to whom insurance shall be payable.

Robert Hunter, the father, also left surviving him no widow, and no children, or descendants of any deceased child, but did leave surviving him a mother, Patsy Hunter, and the above-named uncles and aunts of the deceased soldier, and who were his brothers and sisters.

Patsy Hunter, the mother of Robert Hunter, and grandmother of the deceased soldier, died in the year 1930, leaving a last will and testament, in and by which she undertook to bequeath the above-mentioned insurance money to Tosong James, who was a cousin of the deceased soldier.

By a decree of the probate court, it was adjudged that: "The balance due on the insurance policy now in the hands of James R. McDaniel the administrator was the property of the estate of Will Hunter, deceased, after the death of Robert Hunter the beneficiary and it is the further order and judgment of the court that the said Patsy Hunter, the grandmother of said Will Hunter, the deceased intestate, was the sole and only heir after the death of Robert Hunter, to the es-

*tate of Will Hunter, the deceased intestate, which consisted of the balance of said insurance money."* (Italics supplied.)

As we see it, this case is controlled by our pronouncement in the case of First National Bank of Chattanooga, Tenn. et al. v. Forester, 223 Ala. 218, 135 So. 167. In that case it is held that the unaccumulated installments of a policy of insurance, such as the one now under consideration, became assets of the estate of the insured, and should be distributed to those who took under our laws of descent and distribution as of the date of the insured's death. McGilvary et al. v. Reynolds et al., 224 Ala. 435, 140 So. 417; National Union Bank of Rock Hill v. McNeal, 148 S. C. 30, 145 S. E. 549; Wade v. Madding, 161 Tenn. 88, 28 S.W.(2d) 642; Pivonka v. Pivonka, 202 Iowa, 855, 211 N. W. 246, 55 A. L. R. 570; Coleman v. Harrison, 168 Ga. 859, 149 S. E. 141; Petition of Robbins, 126 Me. 555, 140 A. 366; In re Dempster's Estate, 247 Mich. 459, 226 N. W. 243; Matter of Ryan's Estate, 129 Misc. 248, 222 N. Y. S. 253; Matter of Schaeffer's Estate, 130 Misc. 436, 224 N. Y. S. 305; In re Ogilvie's Estate, 291 Pa. 326, 139 A. 826; Battaglia v. Battaglia (Tex Civ. App.) 290 S. W. 296; Turner et al. v. Thomas (Tex. Civ. App.) 30 S.W.(2d) 558; In re Singer's Estate, 192 Wis. 524, 213 N. W. 479; In re Fink's Estate, 191 Wis. 349, 210 N. W. 834; In re Estate of LeRoy W. Cross, 147 Wash. 441, 266 P. 711.

At the time of the death of the insured, his father, Robert Hunter, was his sole heir, and under our statute of descent and distribution, the entire fund passed to, and vested in, the said Robert Hunter, and on the death of Robert Hunter one-half of the money then unpaid on the policy passed to, and vested in, Patsy Hunter, the mother of said Robert Hunter, while the other half became the property of the brothers and sisters of the said Robert Hunter, viz., Luck Hunter, Seaburn Hunter, Lucy Hunter McRay, and Ellis Hunter, and of the descendants, if any, of any predeceased brothers and sisters of the said Robert Hunter.

There appears in the agreed statement of facts the following statement: "In addition it was admitted that Will Hunter left surviving him a number of cousins who are children of deceased aunts and uncles who had predeceased the intestate, Will Hunter." If these cousins are children or descendants of predeceased brothers and sisters of the said Robert Hunter, they will share in the distribution of one-half of the fund along with the brothers and sisters of Robert Hunter in the right of their deceased parents.

The third subsection of section 7365 of the Code, which relates to descent and distribution, provides: "If there are no children or their descendants, and if there be but one sur-

viving parent, then one-half to such surviving parent, and the other half to the brothers and sisters of the intestate, or their descendants, in equal parts."

And section 7366 provides: *"Lineal Descendants Take Ancestor's Share.*—Under the provisions of the preceding section, the lineal descendants, in equal degree, represent their ancestor; that is, the children of a deceased child, brother or sister of the intestate, are entitled to inherit, in equal parts, the same share that such deceased child, brother, or sister would have inherited, if living; the grandchildren of such deceased child, brother, or sister, taking in equal parts the same share that their parents would have inherited, if living."

In the well-reasoned case of Stallworth v. Stallworth, 29 Ala. 76, Justice Stone, in construing section 1573 of the Code of 1852, now section 7366 of the Code of 1923, in speaking of the terms " 'representation,' and 'right of representation' " has this to say: "The terms 'representation,' and 'right of representation,' as found in the statutes, are of no modern origin. Their import is clearly defined, viz., 'that these representatives take neither more nor less, but just so much as their principals would have done.'—3 Bla. Com. 216–7; 2 Kent's Com. 424–5–6. Representatives stand in the same relationship—the same 'degree of kindred,' to the person 'last seized,' as the person they represent. They take per stirpes. The Code, copying the act of 1806, continues this right of representation to 'the descendants of brothers and sisters of the intestate.' "

At an early date, this court gave a judicial exposition of the Act of 1806, holding that the descendant of a deceased brother or sister stood in the same degree of relationship to the intestate as the brother or sister, if living, would have done. Hitchcock v. Smith, 3 Stew. & P. 29. Of course, the intestate here referred to is Robert Hunter. We make this clear, that no confusion may occur in the court below, on the remandment of this cause for further proceedings therein in conformity to this opinion.

We hold that upon the death of Will Hunter, the father, Robert Hunter, succeeded, under the Alabama law of descent and distribution, to the entire fund represented by the insurance policy. That upon the death of Robert Hunter, his mother, Patsy Hunter, then in life, succeeded to one-half of this fund, and the other half passed to and vested in the brothers and sisters of said Robert Hunter, then living, and to the descendants of any predeceased brothers and sisters of said Robert Hunter; such descendants, if any, taking such interest as their deceased parent would have taken, if living. They take per stirpes.

The said Dora Love and Patsy Hunter, who are sisters of Mary Hunter, the deceased

mother of Will Hunter, take no interest in the fund.

It is earnestly insisted in argument and brief that war risk insurance benefits are limited to a certain particular "class of heirs," and in which a "grandmother" is not included, and in the distribution of funds arising from such insurance we must look to the acts of Congress for the "restrictions, regulations, and procedure in the disbursements of insurance benefits." It is contended that section 511, title 38, USCA, limits the "class" of persons who, in any event, may share in the proceeds of a war risk insurance policy. Particular stress is placed upon paragraph two of that section, which reads: "The insurance shall be payable only to a spouse, child, grandchild, parent, brother, sister, uncle, aunt, nephew, niece, brother-in-law, or sister-in-law, or to any or all of them, and also during total and permanent disability to the injured person." This provision relates only to the class of persons who may be designated as beneficiaries in a war risk insurance policy, and does not direct or determine the method of distribution of the remaining proceeds of such a policy after the death of the beneficiary named in the policy, before the monthly or annual payments absorbed the fund.

The father of the insured soldier, under our statute of descent and distribution, there being no children or their descendants, and no brothers and sisters of the insured, or their descendants, took the entire fund. Upon the death of the father, this fund must be distributed to those who would take under the laws of descent and distribution as of the date of the insured's death. First National Bank of Chattanooga, Tenn. et al. v. Forester, supra; Code, §§ 7365, 7366.

To hold, as contended for by appellants, that section 511, title 38, USCA, or any other rule, regulation, or restriction of Congress controls in the distribution of the funds in question, would be to impute to Congress a purpose to abrogate the law of descent and distribution here in force. We cannot give our assent to, or approval of, such a holding. We are fully convinced that we reached a proper conclusion in the Forester Case, supra, and we adhere to it. It is amply supported by both reason and authority.

It follows, from what we have said above, that the decree appealed from, in holding that Patsy Hunter, the mother of Robert Hunter, succeeded to the entire fund upon the death of Robert Hunter is laid in error. She succeeded only to half of the fund, which the said Tosong James may acquire under the will of Patsy Hunter, and the other half interest in said fund should be distributed to the brothers and sisters now living of said Robert Hunter, and to the descendants of any of his predeceased brothers and sisters; the latter to take per stirpes, in the right of their deceased parents.

The cause will be and is reversed, with directions to the probate court of Sumter county to distribute the funds in accordance with this opinion and judgment.

Reversed and remanded.

ANDERSON, C. J., and THOMAS and BROWN, JJ., concur.