146 So. 528

**UNITED STATES FIDELITY & GUARANTY CO. v. MONTGOMERY, Superintendent of Banks.**

7 Div. 150.

Supreme Court of Alabama.

Jan. 26, 1933.

Rehearing Denied March 16, 1933.

Coleman, Spain, Stewart & Davies, of Birmingham, for appellant.

Young & Longshore, of Anniston, for appellee.

THOMAS, Justice.

The question of subrogation and preference as to funds in a state bank in the process of liquidation is presented by this bill in equity.

It is averred that R. F. Grizzle was theretofore duly appointed and qualified as the guardian of John W. Grizzle, a non compos mentis; that on January 6, 1931, "the said R. F. Grizzle as guardian of John W. Grizzle * * * had on deposit the sum of $2,776.74"; that said "ward was a World War veteran," and that "said R. F. Grizzle, as guardian of said John W. Grizzle, a non compos mentis, when the liquidation of said bank was commenced, had on deposit to his credit as guardian of said John W. Grizzle, a non compos mentis, the sum of $2,776.74, all of which sum had been turned over and delivered to the said guardian by the United States of America to be held and used by said guardian for the use and benefit of said John W. Grizzle, all of said sum having been received from the United States of America by the said guardian as disability allowance and compensation paid by the United States of America for the benefit of said veteran, now a non compos mentis; * * * that said deposit as aforesaid was delivered by the United States of America for the benefit of said veteran under the provisions of the act of Congress relating to 'Pensions, Bonuses, and Veterans' Relief' as found in title 38 USCA, as amended July 2, 1926, May 29, 1928, and July 3, 1930; and said deposit, at the time the liquidation of said bank was commenced, was held by said bank subject to all beneficial rights and limitations upon the disposition of said funds and moneys as fixed and determined by the acts of Congress aforesaid; and your orator states that said funds and moneys, in the amount of $2,776.74 aforesaid, which were held by the Farmers' State Bank at the date of its liquidation was commenced as aforesaid, were subject to all the rights and priorities of the United States of America, and the rights and priorities of the surety on the guardianship bond hereinafter noted as fixed and determined by the acts of Congress as found in 31 USCA § 191 and § 193."

The surety on the guardianship bond avers, in part, that "after the liquidation of said bank was commenced, the said R. F. Grizzle as guardian was removed from the position as guardian of the said John W. Grizzle, a non compos mentis, and one O. D. Sparks was appointed by the Probate Court of Clay County, Alabama, as guardian of the said John W. Grizzle, a non compos mentis; and after the appointment and qualification of the said O. D. Sparks as guardian of the said John W. Grizzle, a non compos mentis, your orator was required to pay and did pay to the said O. D. Sparks as guardian of the said John W. Grizzle, a non compos mentis, the said sum of $2,776.74, said payment being made in discharge of your orator's obligation on said bond of guardianship aforesaid. Your orator further states that at the time of said payment, an assignment was made by the said O.

D. Sparks as guardian of John W. Grizzle, a non compos mentis, vesting your orator with all the rights of said guardian and said ward in and to said fund; and your orator further states that in virtue of said assignment, and in virtue of its payment to the said O. D. Sparks as guardian of the said John W. Grizzle, a non compos mentis, your orator became vested with and is now vested with all the rights of the said ward, and all the right, title, interest and claim and priority of the United States of America in and to said deposit in the said Farmers' State Bank, in the amount aforesaid."

The right of subrogation is asserted and claimed; the demand made on the superintendent of banks for the payment of said sum as a preferential claim was denied.

The prayer for process against H. H. Montgomery, as superintendent of banks of Alabama, prays, inter alia: "That it be ordered and adjudged, that the said moneys on deposit to the credit of the said R. F. Grizzle as guardian of John W. Grizzle, a non compos mentis, at the time the liquidation of said bank was commenced, were received from the United States of America and delivered to the guardian under the provisions of the acts of Congress relating to 'Pensions, Bonuses, and Veterans' Relief,' and as such were funds of the United States of America in such sort as to make applicable the statutes of the United States of America as found in 31 USCA § 191, and were such funds as to give the United States of America, or your orator, under the facts set out in this bill of complaint, a preferential and prior right and claim against said Farmers' State Bank, superior to the rights and claims of all other persons having claims against said Farmers' State Bank."

Many grounds of demurrer were assigned. Among others are: That there is no equity in the bill; that the facts stated in the bill show on their face that the United States of America had, prior to the 6th day of January, 1931, lost control or supervision over R. F. Grizzle as guardian of John W. Grizzle; that legal and equitable title to said money had passed out of the United States of America prior to the 6th day of January, 1931. The demurrer was sustained and time given for amendment, if complainant was so advised and desired. Appeal was from this ruling on demurrer.

The primary question is whether the claim under consideration was entitled to a priority of payment out of the assets of the insolvent bank. The answer depends upon a proper construction of the federal statutes [World War Veterans' Act, 1924, c. 320, § 21 as amended by act July 3, 1930, and § 22, 43 Stat. 613; USCA title 38, §§ 421, 450, 454, as amended] as applied to the facts averred. That is, the bill is filed for fixing a preferen-

tial claim on the part of the surety on the assets of the bank. Such right of subrogation under the provisions of the statute is asserted in 31 USCA §§ 191, 193; U. S. Rev. St. §§ 3466, 3468.

[1] The state superintendent of banks is a statutory receiver of the properties of a state bank in liquidation. Blythe v. Enslen, 219 Ala. 638, 123 So. 71; Green, Supt. of Banks v. Smith, 221 Ala. 484, 129 So. 92; Rainer Lumber Co. v. Hicks, 224 Ala. 138, 138 So. 830.

The construction giving a priority to the government in matters in reference to the public good [such as the Indian and pension funds] has been liberal, to the end that it may protect the government's claims or interests, under different statutes from those here obtaining. Bramwell v. United States Fidelity & Guaranty Co., 269 U. S. 483, 46 S. Ct. 176, 70 L. Ed. 368; Beaston v. Farmers' Bank of Delaware, 12 Pet. 102, 9 L. Ed. 1017; United States v. State Bank of North Carolina, 6 Pet. 29, 8 L. Ed. 308; United States v. Hall, 98 U. S. 343, 25 L. Ed. 180.

In Giles v. Woods, 212 Ala. 522, 103 So. 561, 562, the holding was that the delivery of the allotments to the defendant having the custody of her soldier brother's minor child "was in legal effect a delivery to the child, whereafter no element of a bailment existed." This was our first construction of the War Risk Insurance Act, § 201, as added by Act Oct. 6, 1917, § 2, 40 Stat. 402, amended by Act June 25, 1918, § 4, 40 Stat. 610. In the recent case of McKee et al. v. Jordan (Ala. Sup.) 144 So. 575,[1] the claim of exemptions was allowed to the widow of the beneficiary out of funds paid from such source; and in State v. Wright, 224 Ala. 357, 140 So. 584, the holding was that land purchased for the use of a World War veteran, non compos mentis, with money received under the World War Adjusted Compensation Act, is subject to state and county taxation.

An important and well-considered decision is Shippee, Bank Com'r v. Commercial Trust Co. (In re Callery), 115 Conn. 326, 161 A. 775, where the conservator of an estate of a mentally incompetent war veteran, in receiving compensation and disability benefits, held not an agent of the federal government, and such moneys in his hands are not the funds of the United States; that certificates therefor—certificates of deposit covering funds—are not entitled to priority of payment upon insolvency of the depository bank. In that case, from time to time (as was the fact in the instant case), payments of compensation and disability were made by the government to such guardian or conservator, and such funds were invested in certificates of deposit issued by the trust company subsequently

placed in the hands of a receiver; such claim held not entitled to priority over other creditors of that bank or trust company. The court said: "A conservator is appointed by the probate court for one who is incapable of managing his affairs, and his duty is to manage the estate of his ward and to apply it to his support and that of his family. Gen. Stat. §§ 4815, 4819. The care and management of the ward's estate is primarily entrusted to the probate court, and the conservator is in many respects but the arm or agent of the court in performance of the trust and duty imposed upon it. Johnson's Appeal, 71 Conn. 590, 598, 42 A. 662. The World War Veterans' Act recognizes this status of the conservator in the provision that, when he has been derelict in the performance of his duties, the Director of the Veterans' Bureau may appear in the court which appointed him and make presentation of such fact. No doubt Congress might have provided that money paid by the government for the benefit of a soldier who was incompetent to manage his own affairs should not come into the hands of a guardian appointed by a state court, but should be held and disbursed on account of the beneficiary by some agency of the United States as is done in the case of certain Indian tribes. In such case the United States itself is the guardian of the Indian upon the reservation, and when it causes money received by it through its officer for the use of the Indian to be deposited to its credit in a bank, the money is that of the United States, and it is entitled to priority of payment out of the funds of the bank. U. S. F. & G. Co. v. Bramwell (D. C.) 295 F. 331, affirmed 269 U. S. 483, 46 S. Ct. 176, 70 L. Ed. 368. The World War Veterans' Act does not so provide, but does provide for the payment of the benefits due an incompetent veteran to his guardian or conservator appointed by the state court. When such funds come into his possession, the title to them vests in the ward, and the possession of the guardian or conservator is deemed to be the possession of the ward. 28 C. J. 1128; 12 R. C. L. 1123. * * * The provision of section 454 of the code that allowances payable thereunder shall not be assignable or subject to the claims of creditors, and shall be exempt from taxation, do not tend to support the contention of the claimant that after such funds have been paid to the representative of the person to whom they were payable they still remain moneys of the United States. Rev. St. U. S. § 4747, title 38, USCA § 54, provides that no money due or to become due to any pensioner shall be liable to attachment or levy under legal process 'but shall inure wholly to the benefit of such pensioner.' This statute protects pension money from attachment so long as it remains due to the pensioner, but not after it has been actually paid over, and has come into his possession. Price v. Society for Savings, 64 Conn. 362,

---

[1] 225 Ala. 598.

365, 30 A. 139, 42 Am. St. Rep. 198; McIntosh v. Aubrey, 185 U. S. 122, 22 S. Ct. 561, 46 L. Ed. 834. * * * We do not understand such result to be required by the decision in U. S. v. Hall, 98 U. S. 343, 25 L. Ed. 180, cited upon the claimant's brief, which held that Congress had the power to declare that a guardian of a pensioner, who embezzled the pension money in his hands, was guilty of an offense against the United States. Its holding that Congress might pass laws for the protection of the pension money while in the hands of a guardian of the pensioner, is far from ruling that by so doing it prevented the title to the money from passing to the pensioner when it was paid over to his guardian. In State ex rel. Smith v. Shawnee County Com'rs, 132 Kan. 233, 294 P. 915 (1931, certiorari denied 283 U. S. 855, 51 S. Ct. 648, 75 L. Ed. 1462), it was held that none of the provisions of the World War Veterans' Act indicate an intention to retain full control and responsibility in the government for benefits payable to an incompetent veteran until they reach his hands, and that when such funds are paid to his guardian title and possession have both passed from the government, and they are no longer 'payable' and consequently not entitled to exemption under section 454 of the Code." Shippee, Bank Com'r, v. Commercial Trust Co. (In re Callery), 115 Conn. 326, 161 A. 775, 777, 778.

We believe this construction of the statutes adverted to is reasonable, and apply the same to the facts before us. This is in accord with our cases: McKee et al. v. Jordan, supra, the allowance of exemptions to the widow; State v. Wright, supra, holding such moneys and proceeds passing to the ward were subject to taxes; Hunter v. James (Ala. Sup.) 144 So. 576,[1] and First Nat. Bank of Chattanooga, Tenn., v. Forester, 223 Ala. 218, 135 So. 167, applying the statutes of descent and distribution to such moneys upon the death of the beneficiary; and Perrydore v. Hester, 215 Ala. 268, 110 So. 403, declaring as to converted and unconverted war risk insurance, matured and unmatured and accumulated and unaccumulated claims or funds as affecting beneficiaries and exemptions. The personal representative or guardian in such cases held as the trustee or conduit to receive and pass on the funds to such beneficiary, or to those entitled thereto, free from the debts of the decedent. McKee et al. v. Jordan, 225 Ala. 598, 144 So. 575; First Nat. Bank, etc., v. Forester, supra.

■ Such property coming into the possession of a guardian, the title passes into the ward and the possession of the guardian is deemed the possession of the ward for purposes here pertinent. Chambers v. Perry, 17 Ala. 726; Hopper, Adm'r v. McWhorter, 18 Ala. 229; Longmire v. Pilkington, 37 Ala. 296; Magee v. Toland, 8 Port. 36; Mason

v. McNeill's Executors, 23 Ala. 201; Walker v. Fenner, 28 Ala. 367; Thrasher v. Ingram, 32 Ala. 645; Ragsdale v. Norwood, 38 Ala. 21, 79 Am. Dec. 79; Hemphill v. Moody, 64 Ala. 468.

■ The federal statutes fail to disclose the intention of the government to reserve title in the sovereign until ultimately dissipated or consumed by the ward. USCA title 38, p. 215, § 450, p. 216, § 451. It is not a question of whether or not Congress may not have annexed such conditions to the grant or ultimate title, but that it did not do so. Frisbie v. United States, 157 U. S. 160–166, 15 S. Ct. 586, 39 L. Ed. 657; United States v. Hall, 98 U. S. 349, 25 L. Ed. 180. The pertinent statutes [USCA title 38, §§ 450, 451, pp. 215, 216] are:

"§ 450. *Payments to minors, mental incompetents, or persons under legal disability.* Where any payment under this chapter is to be made to a minor, other than a person in the military or naval forces of the United States, or to a person mentally incompetent, or under other legal disability adjudged by a court of competent jurisdiction, such payment may be made to the person who is constituted guardian, curator, or conservator by the laws of the State or residence of claimant, or is otherwise legally vested with responsibility or care of the claimant or his estate: Provided. That prior to receipt of notice by the bureau that any such person is under such other legal disability adjudged by some court of competent jurisdiction, payment may be made to such person direct: Provided further, That for the purpose of payments of benefits under Part II of this chapter, where no guardian, curator, or conservator of the person under a legal disability has been appointed under the laws of the State or residence of the claimant, the director shall determine the person who is otherwise legally vested with responsibility or care of the claimant or his estate: And provided further, That the director, in his discretion, may suspend such payments to any such guardian, curator, conservator, or other person who shall neglect or refuse, after reasonable notice, to render an account to the director from time to time showing the application of such payments for the benefit of such minor or incompetent beneficiary. (June 7, 1924, c. 320, § 21, 43 Stat. 613.)

"§ 451. *Payments to personal representatives.* The amount of the monthly installments of compensation, yearly renewable term insurance, or accrued maintenance and support allowance which has become payable under the provisions of Parts II, III, or IV of this chapter, but which has not been paid prior to the death of the person entitled to receive the same, may be payable to the personal representatives of such person: Provided, That in cases where the estate of the decedent would escheat under the laws of the

---

[1] 225 Ala. 610.

place of his residence, such installments shall not be paid to the estate of the decedent but shall escheat to the United States and shall be credited to the appropriation from which the original award was made. (June 7, 1924, c. 320, § 26, 43 Stat. 614.)"

The foregoing is sufficient to uphold the action of the trial court in sustaining the demurrers of the superintendent of banks to the appellant's bill. However, it was well said in Puffenbarger v. Charter, Banking Com'r (W. Va.) 165 S. E. 541, 542, that: "The possession of the guardian is consistently regarded as the possession of the ward. 28 C. J. 1128; 12 R. C. L. 1123. Finding nothing in the federal statute to disturb that conception, we are forced to conclude as did the Supreme Court of Kansas (after an exhaustive discussion of this subject): 'That the intervention of a guardian does not leave the pension funds still in the hands of the government * * * but, when paid to the guardian, the title and possession have both passed from the government.' State ex rel. Smith v. Commissioners, 132 Kan. 233, 294 P. 915, 921. The Supreme Court of the United States indicated its approval of the Kansas decision by denying a writ of certiorari therein. See Kansas ex rel. Boynton v. Board of County Com'rs of Shawnee County, 283 U. S. 855, 51 S. Ct. 648, 75 L. Ed. 1462." See, also, Smith, Special Deputy Banking Com'r v. Spicer's Guardian, etc., 244 Ky. 68, 50 S.W.(2d) 64. We are impressed with the soundness of this view, and hold the ruling of the lower court is free from error, and is due to be affirmed. It is so ordered.

Affirmed.

ANDERSON, C. J., and BROWN and KNIGHT, JJ., concur.

