No. 30,834.

The City of Liberal, *Appellee*, v. S. O. Blankenship, *Appellant*.

(21 P. 2d 893.)

Opinion filed May 6, 1933.

*Rellis C. Eastman,* of Liberal, and *Eustace Smith,* of Hutchinson, for the appellant.

*H. A. Gaskell,* city attorney, for the appellee; *Vincent G. Fleming,* of Liberal, of counsel.

The opinion of the court was delivered by

Dawson, J.: The defendant was convicted of violating the city ordinance of Liberal which imposed a poll tax on all male persons between twenty-one and fifty years of age who are not a public charge.

The city ordinance was in substantial accord with R. S. 68-201, and provided that the tax could be satisfied by paying three dollars in cash or by two days' service at manual labor.

From conviction in the police court and sentence to pay a fine of $5, defendant appealed to the district court where he waived a jury trial and was convicted and sentenced as before. He appeals on the principal ground that the evidence in both courts below showed that he was a public charge and therefore exempt from the provisions of the ordinance.

That evidence, briefly summarized, was to this effect: Defendant was thirty-seven years old, a resident of Liberal, and owned a home in that city and also owned an automobile. He was physically incapacitated to perform manual labor. He had been a soldier in the United States army from April 6, 1917, until September 3,

1918, when he received an honorable discharge on account of total disability. This entitled him to admission to the United States army hospital at Fort Bayard, N. M., and likewise to be received as a beneficiary in any United States soldier's home. Because of his physical incapacity the federal government has been paying him $100 per month as. a pension; and the bureau of war risk insurance has awarded him the sum of $10,000, payable at the rate of $57.50 per month, which payments he has been receiving since September 3, 1918.

The question before us is simply this: Does a man who is physically incapacitated, who owns his home and an automobile, and who now has and for several years yet to come will have a war risk insurance income of $57.50 per month, and who draws a government pension· of $100 per month, fall within the class of persons which the city ordinance exempts from the payment of a poll tax as "a public charge"? In the primary meaning of the term, "a public charge" is a pauper supported at public expense. In its more comprehensive aspects a public charge means any person requiring the supervisory care of public authority because of his helpless destitution, his mental or moral irresponsibility, or his delinquent proclivities. (*United States v. Williams*, 175 Fed. 274, 275; 50 C. J. 852.)

In our own early case of *State, ex rel., v. Osawkee Township*, 14 Kan. 418, where the constitutionality of a statute enacted ostensibly for the relief of the poor was under discussion, it was said:

"It must be borne in mind, however, that the term 'poor' is used in two senses. We use it in one sense simply as opposed to the term 'rich.' Thus we speak of the ordinary laborers, mechanics, and artisans as poor people, without a thought of describing persons who are other than self-supporting. Indeed the large majority of our people are poor people, and yet they would feel insulted to be told that they are objects of public charity. We use the term also to describe that class who are entirely destitute and helpless, and therefore dependent upon public charity." (p. 421.)

In *Town of Rhine v. City of Sheboygan*, 82 Wis. 352, it was held that a man and wife who had a house and three acres of land worth $1,200 subject to an encumbrance of $450, for which they refused an offer of $1,100, but who were otherwise without means, were not entitled to support as public charges under the Wisconsin statute which cast the support of poor persons on the town where they had a legal settlement. The court said:

"While such person is possessed of property not absolutely indispensable for daily use, he must apply it to his support by sale or by way of security. It is not the poor man, as contradistinguished from the man of ample means or the rich, that is an object of charity; it is the *pauper,* and not the poor man in the ordinary sense of the term, the man not only in want, but who has no means or resources for relieving it, who is entitled to the statutory aid provided in obedience to the dictates of the humane policy of the statute relating to the poor." (p. 354.)

Cases can be imagined where persons may temporarily become a public charge through sickness or other misfortune although they do own property, where their property cannot be promptly used as a basis of credit. In *Coffeen v. Preble,* 142 Wis. 183, where such a situation was under consideration, it was held:

"It was a question for the jury in this case whether a family consisting of father, mother and minor son, all of whom were ill with typhoid fever and bedridden, were entitled to relief from the town, although they owned a homestead worth $725, subject to a mortgage not exceeding $450, and had about $7 in money and some credit at a grocery." (Syl. ¶ 3.)

See, also, instructive note to this case in 27 L. R. A., n. s., 1079-1082.

From these authorities it would seem that defendant, being the owner of a home and an automobile, was not a public charge, and therefore he was properly subjected to the payment of the city poll tax.

This conclusion renders it unnecessary to consider whether the fact that defendant was receiving a monthly income of $57.50 from his war risk insurance (not to mention his government pension of $100 per month) would be sufficient to exclude him from the class of being a public charge. In *State, ex rel., v. Shawnee County Comm'rs,* 132 Kan. 233, 294 Pac. 915, 283 U. S. 855, 75 L. Ed. 1462, it was held that when the proceeds of a war risk insurance policy have become part of the general mass of property within the state, it is subject to taxation. The logical deduction from that decision is that defendant would have been deprived of no exemption right guaranteed by state or federal law if he had been held subject to the poll tax although possessed of no other means with which to pay it. The court has noted with complaisant detachment the comment on the case just cited which appears in the February, 1933, issue of the *Kansas Bar Association Journal* with its citations of later cases from other jurisdictions (pp. 239-241). Still later cases, not yet officially

reported, in accord with our view are: *United States Fidelity & Guaranty Co. v. Montgomery,* (Ala.) 146 So. 528; *State v. Blair,* (Tenn.) 57 S. W. 2d 455.

The judgment is affirmed.